NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff,

v.

Lars VAAGE, Clinton James Lewis, Clinton A. Lewis, Josephine Monaco and Felix N. Monaco, individually, and as parents of Michelle Monaco, an infant of the age of 14 years, Samuel C. Williams and Arthur Williams, John J. McCloskey, Sheriff of the City of New York, William J. Rice, Jr., Sheriff of the County of Albany, George F. Spike, Sheriff of the County of Yates, Nelson A. Rockefeller, Governor and Louis J. Lefkowitz, Attorney General, respectively, of the State of New York, as representatives of the Sheriffs of all other counties in the State of New York, and Henry Root Stern, Jr., Superintendent of Insurance of the State of New York, Defendants.

AMERICAN INTERNATIONAL UNDERWRITERS CORPORATION and the Hanover Insurance Co. of New York, Plaintiffs,

v.

Carl S. VICTOR, Lyon Associates, Inc. and John J. McCloskey, Sheriff of the City of New York, Defendants.

Nos. 66 Civ. 2978, 66 Civ. 3389.

United States District Court
S. D. New York.

March 17, 1967.

Dunnington, Bartholow & Miller, by Charles G. Pillon, and William M. Bradner, New York City, for plaintiff Nationwide Mutual Ins. Co.

Lee, Mulderig & Celentano, by Peter J. Malloy, Jr., New York City, for plaintiffs American International Underwriters Corp. and Hanover Ins. Co.

Louis J. Lefkowitz, Atty. Gen. of New York, by Philip Kahaner, Asst. Atty. Gen. (Joel Lewittes, Asst. Atty. Gen., on the brief), for defendants Hon. Nelson A. Rockefeller, Hon. Louis J. Lefkowitz, Hon. Henry R. Stern, Jr.

Sidney Posner, New York City, for defendant John J. McCloskey, Sheriff of the City of New York.

Raymond D. Gage, Geneva, N. Y., for defendants Monaco.

Stanley Lieberman, by Schwartz, Levitt & Sommer, Brooklyn, N. Y. (Arthur

Blitz, Brooklyn, N. Y., on the brief), for defendant Vaage.

Gair & Gair, by Herman Schmertz, New York City, for defendant Victor.

Doman, Dunn & Zuckerman, New York City, for amicus curiae American Foreign Insurance Ass'n.

Watters & Donovan, New York City, for amicus curiae American Insurance Association.

Bond, Schoeneck & King, Syracuse, N. Y., for amicus curiae American Mutual Insurance Alliance.

Aranow, Brodsky, Bohlinger, Einhorn & Dann, New York City, for amicus curiae National Association of Independent Insurers.

### OPINION

Before HAYS, Circuit Judge, and TYLER and TENNEY, District Judges.

TYLER, District Judge.

This is a motion by plaintiff insurance companies [1] (hereinafter sometimes referred to as the "companies") for interlocutory injunctions against attachment and garnishment of the proceeds of insurance policies issued by the companies to certain non-resident policyholders.

Although the companies have their home offices elsewhere, they are qualified to do business in the State of New York. The defendants in Action No. 1 are the sheriffs of three counties in New York State, the Governor, the Attorney General and the Superintendent of Insurance of the State of New York, and the parties litigant in two personal injury actions which were commenced against various defendants who are insured by plaintiff Nationwide Mutual Insurance Company ("Nationwide"). The defendants in Action No. 2 are the parties litigant in a third personal injury action now pending in the New York courts and the Sheriff of the City of New York.

By their pleadings and other papers, the parties concede that the New York courts have ordered attachments of the insurance policies issued by plaintiffs, pursuant to the relevant New York attachment statutes, Civil Practice Law and Rules ("CPLR") Sections 5201 and 6202,[2] and that levies have been made by the defendant-sheriffs pursuant to these orders of attachment. Such attachments and resultant levies have occurred, it is agreed, as a result of a recent construction of the aforesaid statutes in relation to casualty insurance policies by the Court of Appeals of New York in a case entitled Seider v. Roth, 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966). The companies argue strenuously that such application of the New York attachment statutes to the policies written by them is repugnant to their rights under Article I, Section 10 (impairment of contracts) and the Fourteenth Amend-

[1]. Plaintiff American International Underwriters Corporation ("AIUC") is the "home-foreign manager" for some 13 American stock companies in a territory in the Far East. As such, its duties are to companies issuing policies of insurance. The other two plaintiffs are stock companies which write and issue to the general public casualty insurance policies.

[2]. Section 6202 provides in part that:
"Any debt or property against which a money judgment may be enforced as provided in section 5201 is subject to attachment."
Section 5201 deals with enforcement of money judgments. It provides in pertinent part as follows:
"(a) Debt against which a money judgment may be enforced. A money judg-

ment may be enforced against any debt, which is past due or which is yet to become due, certainly or upon demand of the judgment debtor, whether it was incurred within or without the state, to or from a resident or non-resident, unless it is exempt from application to the satisfaction of the judgment. A debt may consist of a cause of action which could be assigned or transferred accruing within or without the state.
(b) Property against which a money judgment may be enforced. A money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment. * * * *"

ment (deprivation of property without due process of law) of the Constitution.[3]

On October 26, 1967, a single judge of this court denied the companies' application for a temporary restraining order but, considering plaintiffs' constitutional arguments not entirely free from doubt, convened a three-judge court as prayed. 28 U.S.C. § 2281. The cases came on for hearing before the statutory court on January 27, 1967.

In their complaints, the companies allege that in all three personal injury actions, the complainants seek damages in excess of the applicable policy limits. Further, it is stated that the defendant policyholders have notified the companies that no steps should be taken by the latter to subject the former to *in personam* jurisdiction of the courts of the State of New York. In the view of the companies, these circumstances impose various obligations upon them either not contemplated by the insurance contracts or not permitted by their terms. It is also asserted that the levies by the defendant-sheriffs have brought into play the provisions of CPLR Section 6214,[4] which, according to counsel for the companies, prohibit the insurers from "taking any action to retain counsel for (their policyholders) or from incurring any obligation for (the policyholders') defense".

In their complaints and motion papers, plaintiffs seek interesting and drastic relief, the nature of which warrants summarization, particularly in relation to our view of this case to be discussed here-inafter. Essentially, the companies pray for:

1. A declaratory judgment "settling and declaring" the rights and obligations under the insurance contracts;

2. A declaratory judgment that the relevant New York attachment statutes as applied by the Court of Appeals in Seider v. Roth, supra, and CPLR Rule 320,[5] dealing with the nature and effects of appearances by parties litigant in New York courts, are unconstitutional with respect to casualty insurance policies such as those issued by the companies;

3. Alternatively, in the event that this court believes that the New York statutes as construed and applied by the *Seider* court are constitutional, a declaratory judgment that the companies are authorized to enter general appearances in the courts of New York on behalf of their non-resident policyholders;

4. An order enjoining the companies' policyholders from taking any other and independent action in respect to the personal injury claims asserted against them; and

5. An order enjoining the defendant-sheriffs from taking any further action respecting the policies here in issue and from levying upon any attachment of any other policy issued by the companies to a non-resident of the State of New York.

As already indicated, the companies bottom their claims for relief upon a number of constitutional arguments, which can be fairly described in somewhat more detail as follows: First, it is said that each attachment "impounds" the contractual right and duty of the in-

---

3. The companies also suggest that the New York attachment statutes as applied by the *Seider* case constitute an unreasonable burden on interstate commerce. As we read their briefs, however, this argument has not been sufficiently developed here, except perhaps, in the brief of one of the amici curiae; moreover, at this stage, consideration of such a contention, in our view, is not necessary to disposition.

4. In particular, this statute provides: "[T]he garnishee is forbidden to make or suffer any sale, assignment or transfer of, or any interference with any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff, except upon direction of the sheriff or pursuant to an order of the court. * * *"

5. In essence, the companies maintain that Rule 320 must be construed to mean that any defense other than the jurisdictional defense by or for the policyholders in these cases will constitute a general appearance by such policyholders.

surer to defend the policyholder and thus either deprives the issuing company of a hearing on the question of liability or subjects it to possible double payment of the cost of defense. Second, it is claimed that the attachments constitute direct actions by the plaintiffs in the personal injury suits against the companies in plain contravention of the policy terms. Finally, we are told that the companies are denied due process of law in that their policyholders are permitted to default at the companies' expense in derogation of the policy provisions.

To understand the companies' arguments and to foreshadow the reasons why this court concludes that the cases before us must be dismissed, it may be helpful to outline the status and procedural history of the three personal injury actions which are the subjects of the complaints.

*The Vaage Action:* On December 31, 1963, an auto owned by defendant Clinton A. Lewis and driven by co-defendant Clinton James Lewis, his son, allegedly struck and injured Lars Vaage, a citizen and resident of Norway, in North Carolina. The Lewis defendants, both residents of North Carolina, were insured under a policy issued by Nationwide in that state. The policy limits are $5,000 for property damages, $10,000 for injuries or death of any one individual and a maximum of $20,000 for injury or death of all individuals involved in a single accident. In August, 1965, Vaage filed a summons and complaint in the Supreme Court of New York, Queens County, against the Lewis defendants, alleging damages of $100,000. An order of attachment was issued by that court and served upon Nationwide in the City of New York. Personal service was thereafter effected upon the Lewises in North Carolina. The sheriff having jurisdiction levied pursuant to the attachment, and Nationwide made a prompt motion in the New York court to vacate the order of attachment. This motion was denied by an order entered on November 18, 1965. An appeal from that order is presently pending in the Appellate Division, Second Department. Further proceedings under the order of attachment, however, were stayed by the New York appellate court pending resolution of the appeal.[6] In September, 1966, the Lewis defendants instructed Nationwide to take no action on their behalf which would subject them to *in personam* jurisdiction of the New York courts.

*The Monaco Action:* In September, 1964, Mr. and Mrs. Monaco and their daughter were injured in an automobile collision in Pennsylvania. Involved in the collision was an automobile owned by defendant Samuel C. Williams and operated by defendant Arthur Williams. The Monacos are residents of the State of New York. The Williams defendants are residents of the State of Pennsylvania. An insurance policy had been issued by Nationwide in Pennsylvania to defendant Samuel C. Williams. The policy limits are for up to $10,000 for injury or death of any one person but not in excess of $20,000 for all persons involved in any one accident. In August, 1966, the Monacos commenced an action against the Williams defendants by filing a summons and complaint in the Supreme Court of New York, Ontario County. They also obtained an order of attachment which was served upon Nationwide at its Syracuse, New York office. Like the Vaage action, the Monaco action alleges damages in excess of the applicable policy limits. It does not appear that any appearance has been served by or on behalf of the Williams defendants in the Monaco action.

*The Victor Action:* In December, 1965, Carl S. Victor allegedly sustained personal injuries at Da Nang, South Viet Nam as a result of a collision between a motorcycle driven by him but owned by one George S. Bishop and a truck owned by Lyon Associates, Inc., and driven by a Lyons employee named Drysdale. Thereafter, Victor commenced an action

6. This stay, in our view, is not such as would require stay action on our part as contemplated by 28 U.S.C. § 2284(5).

against Lyon Associates, Inc., and Drysdale in the Supreme Court of New York, County of New York, for $750,000 an amount far in excess of the $20,000 limit of the policy issued to Lyon Associates by plaintiff The Hanover Insurance Company of New York ("Hanover"). In August, 1966, Victor obtained an order of attachment and caused it to be served on Hanover and AIUC. The latter firms moved to vacate the attachment. The Supreme Court of New York vacated it as to AIUC on the ground that the latter corporation was not the issuer of the policy in question. However, expressly relying upon the decision of Seider v. Roth, that court refused to vacate the attachment against Hanover. The policyholder, Lyon Associates, Inc., is a Maryland corporation which apparently does no business in New York and is not qualified to do business here. Drysdale, Lyon's employee, apparently does not reside in New York. The record does not indicate of what state Carl S. Victor is a resident. It does appear that the sheriff of the City of New York has levied upon the policy issued by Hanover to Lyon Associates, Inc. Hanover, however, so far as we are told in the papers, has not appealed the decision of the Supreme Court of New York denying vacatur of the attachment order.

Although not especially relevant to our reasoning in disposing of these actions before us, a synopsis of the holding of the Court of Appeals of New York in Seider v. Roth, supra, will serve at least to partially explain the concern of the companies and the bases for their complaints.

In Seider, the two plaintiffs, husband and wife, were residents of New York. They alleged in their complaint that they were injured in an automobile accident in Vermont which occurred by reason of the negligence of the defendant, a resident of the Province of Quebec who was insured under a policy issued in Canada by Hartford Accident and Indemnity Company. Hartford was and is an insurer doing business in New York. The plaintiffs obtained an order of attachment which was served upon Hartford at its New York office.

Like the policies at issue here, the policy written by Hartford in the Seider case was typical and customary in form. It required Hartford to defend the policyholder in any automobile negligence action and, if judgment were rendered against the policyholder, to indemnify him therefor to the extent of the policy limits. The defendant-insured made a motion to vacate the attachment; Special Term of the trial court denied the motion. The Appellate Division affirmed Special Term but certified the question to the Court of Appeals.

As that court considered the matter, the "whole question" was "whether Hartford's contractual obligation to defendant is a debt or cause of action such as may be attached". 17 N.Y.2d at 113, 269 N.Y.S.2d at 101, 216 N.E.2d at 314. In an opinion by Chief Judge Desmond, the majority answered this question in the affirmative, reasoning that as soon as the accident occurred, there was imposed upon the insurance company a contractual obligation to defend which should be considered a debt within the meaning of CPLR Sections 5201 and 6202. In this connection, the court said, "the policy casts on the insurer several obligations which accrue as soon as the insurer gets notice of an accident, and whether or not a suit is ever brought". 17 N.Y.2d at 113, 269 N.Y.S.2d at 101, 216 N.E.2d at 314. With regard to the Hartford's argument that this ruling would amount to establishing a "direct action" against the insurer, the Court of Appeals conceded that this was true only to the extent that its ruling would place jurisdiction in New York State and require Hartford to defend here, "not because a debt owing by it to the defendant has been attached but because by its policy it has agreed to defend in any place where jurisdiction is obtained against its insured". 17 N.Y.2d at 114, 269 N.Y.S.2d at 102, 216 N.E.2d at 315.

Apparently, none of the constitutional arguments advanced by the companies in this suit were urged before the Court

of Appeals of New York. Moreover, the Court of Appeals was neither asked to nor did it make any specific rulings or observations with regard to the obligations of an insurance company *vis-à-vis* its insured, once jurisdiction has been obtained by the attachment statutes.

Defendants press a variety of arguments addressed to the merits of the companies' claims of deprivation of constitutional rights. Alternatively, defendants urge this court to abstain from exercising jurisdiction here until the New York courts resolve the various questions not answered in Seider v. Roth. But for an exclusionary rule or rules depriving us of jurisdiction here, as we will discuss hereinafter, we would be inclined to agree that the abstention doctrine would be appropriate. As the procedural histories of the three personal injury actions here involved indicate, the companies have yet to fully and fairly present their constitutional arguments to the New York courts at any level. More important, the various attachment orders and levies thereunder have done nothing to put the companies in the dire jeopardy which they here conjecture will soon befall them. There is no court ruling or order which has required the companies to "pay double" for the defense of their policyholders in the three suits in question. There has been no court ruling that the policyholders are legally entitled to ignore the plain provisions of the so-called cooperation clauses in the policies in question. Finally, no court has held that the attachments and levies thereunder prevent the companies from defending here in New York—in fact, the *Seider* court authorized and directed a defense under the circumstances here pertaining. In short, whatever the merits of their arguments, and assuming that no other jurisdictional infirmities are present, the companies have not shown that the existing state actions cannot be prosecuted with full protection of their constitutional contentions. See Railroad Commission of Texas v. Pullman Company, 312 U.S. 496, 501, 61 S. Ct. 643, 85 L.Ed. 971 (1941); Government and Civic Employees Organizing Committee, CIO v. Windsor, 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894 (1957); England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 420, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

However this may be, we are convinced that both actions, insofar as they seek injunctive relief, must be dismissed for lack of jurisdiction. We do not reach the question of abstention in these cases because (1) the complaints do not state valid claims for relief within the purview of the three-judge court statutes, 28 U. S.C. §§ 2281 and 2284, and (2) such injunctive relief as the companies here seek is specifically barred by the anti-injunction statute, 28 U.S.C. § 2283.

■ In support of the first ground —that the complaints are wanting in equity (see Atlantic Fishermen's Union v. Barnes, 71 F.Supp. 927, 928 (D.C. Mass.1947)), it might be sufficient to observe that the state officials who are joined as party defendants are doing nothing which causes the constitutional infirmities of which the companies here complain. Not even the companies maintain that the Governor, the Superintendent of Insurance or the Attorney General of New York have acted or can act to affect the rights asserted in the complaints before us. As their papers and arguments indicate, the defendant-sheriffs are the only state officials sought to be enjoined. The sheriffs, however, have done nothing to deny the companies due process or to require them to expend monies in excess of those required by their insurance contracts. What is more, any future action by the sheriffs would have to come about by virtue of a specific order of a New York court. See CPLR § 6214. We, of course, cannot assume that further orders of the New York courts will require any of the sheriffs who are parties here to act or fail to act in such a way as to deprive the companies of their constitutional rights. In short, there is no state agency or officer before this court to be sensibly or effectively enjoined so as to afford the companies the relief for which they

pray. Absent any basis for injunctive relief, this court loses all authority and power as a statutory three-judge court. 28 U.S.C. § 2281; see Oklahoma Gas & Electric Co. v. Oklahoma Packing Co., 292 U.S. 386, 54 S.Ct. 732, 78 L.Ed. 1318 (1934); Kennedy v. Mendoza-Martinez, 372 U.S. 144, 155, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); Ex parte Bransford, 310 U.S. 354, 361, 60 S.Ct. 947, 84 L.Ed. 1249 (1940).

■ Put differently, there is substantial doubt in our minds "whether the complaint(s) at least formally allege(s) a basis for equitable relief", not only as against the state officers therein named but also against all of the parties defendant. See Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962). Since the state officials here joined as parties are not doing anything or cannot do anything directly to threaten irreparable injury to the companies, it follows that the complaints are wanting in equity— i. e., that they do not state facts sufficient to state valid claims for injunctive relief. See Allegheny Airlines, Inc. v. Fowler, 261 F.Supp. 508, 516 (S.D.N.Y. 1966).

■ What has already been said leads us to the second and absolute bar to these suits in this or any other federal court. In substance, the companies would have us enjoin further proceedings in the New York courts which have assumed jurisdiction of the personal injury actions giving rise to the complaints here. Congress, however, long ago enacted a statutory bar to any such interference by providing that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283; [7] see Hill v. Martin, 296 U.S. 393, 56 S.Ct. 278,

80 L.Ed. 293 (1935); Kohn v. Central Distributing Co., 306 U.S. 531, 59 S.Ct. 689, 83 L.Ed. 965 (1939); Oklahoma Packing Co. v. Oklahoma Gas & Electric Co., 308 U.S. 530, 309 U.S. 4, 60 S.Ct. 215, 84 L.Ed. 447 (1940).

■ Joinder here of the sheriff-defendants as the principal state officials against whom the full force of federal injunctive power would apply does not avoid the prohibition of Section 2283. As Justice Brandeis long ago pointed out, that prohibition is directed against a stay of state court "proceedings" in the fullest sense of the word. "It applies alike to action by the court and by its ministerial officers; applies not only to an execution issued on a judgment, but to any proceeding supplemental or ancillary taken with a view to making the suit or judgment effective. * * *" Hill v. Martin, supra 296 U.S. at 403, 56 S.Ct. at 283. Clearly, the sheriff-defendants have acted and will act only as ministerial officers of the New York courts; as such, they cannot be enjoined by this court. Carras et al. v. Monaghan, 65 F. Supp. 658 (W.D.Pa.1946); see Kohn v. Central Distributing Co., supra; Leathe v. Thomas, 97 F. 136 (7th Cir. 1899).

It follows, therefore, that this three-judge court must be dissolved and those portions of the complaints seeking injunctive relief, interlocutory and final, against the defendants who are state officials must be dismissed. Because a federal district court not sitting pursuant to Sections 2281 and 2284 of Title 28 of the United States Code may have jurisdiction of the remaining claims to the extent that they are grounded upon the declaratory judgment statutes, 28 U.S.C. §§ 2201 and 2202, we leave for resolution by a single judge the question, if and when seriously pressed, of whether or not such remaining claims should be dismissed.

It is so ordered.

7. Formerly 28 U.S.C. § 379, § 265 of the Judicial Code. The exceptions set forth in the statute are in no way operative in the instant case.