Betty **PODOLSKY**, Plaintiff,

v.

Ethel M. **DEVINNEY** and Garry A. **Devinney**, Defendants.

No. 67 Civ. 3150.

United States District Court
S. D. New York.

Feb. 26, 1968.

---

**490**

Isacson, Weinberger & Nadler, New York City, for plaintiff; by Myron Nadler, New York City, of counsel.

Whalen, O'Neill & Pillon, New York City, for General Accident Fire and Life Assurance Corporation, Ltd. and Ethel M. Devinney; by Charles G. Pillon, New York City, of counsel.

CROAKE, District Judge.

## OPINION

The present motion, seeking vacation of an order of attachment, challenges the constitutionality of the recent decision by the New York Court of Appeals in Seider v. Roth, 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966).[1] In that case the Court of Appeals decided that an automobile liability insurance policy held with an insurance company doing business in New York becomes an attachable debt within the meaning of §§ 5201 and 6202 N.Y.C.P.L.R.[2] upon the occurrence of an automobile accident.[3] The defendants, through attorneys secured by their insurer, General Accident Fire & Life Assurance Corporation, Ltd. (GENERAL ACCIDENT)[4] charge that New York lacks the requisite minimum contacts necessary to subject the insurance policy to levy and therefore assertion of jurisdiction by New York State violates the due process clause of the 14th amendment of the United States Constitution. The motion papers on behalf of the insurer as garnishee also contend that because a limited appearance is not permitted under the New York law the named defendants, by failing to authorize an appearance of the insurance company on their behalf, may subject the insurer to a default judgment up to the policy limits without ever allowing the company to defend the action on its merits.[5] GEN-

---

1. The constitutionality of the rule laid down in Seider v. Roth has been upheld by the New York Court of Appeals in a sharply divided opinion. Simpson v. Loehmann, 21 N.Y.2d 305, 287 N.Y.S.2d 633, 234 N.E.2d 669 (December 29, 1967), discussed at pp. 492–493, infra.

2. Section 5201 in pertinent part provides:
 "(a) *Debt against which a money judgment may be enforced.*
 A money judgment may be enforced against any debt, which is past due or which is yet to become due, certainly or upon demand of the judgment debtor, whether it was incurred within or without the state, to or from a resident or nonresident, unless it is exempt from application to the satisfaction of the judgment. A debt may consist of a cause of action which could be assigned or transferred accruing within or without the state.
 "(b) *Property against which a money judgment may be enforced.*
 A money judgment may be enforced against any property which could be as-

signed or transferred, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment. * * *" See also § 6202 N.Y.C.P.L.R. providing that debts described in § 5201 are subject to attachment.

3. See Seider v. Roth, 17 N.Y.2d 111, 113, 269 N.Y.S.2d 99, 101, 216 N.E.2d 312, 314 (1966).

4. GENERAL ACCIDENT is a corporation organized and existing under the laws of Great Britain and is authorized to do business in New York, New Jersey, and several of the other states in the United States. (See Pillon Affidavit in support of the present motion.)

5. See § 320 N.Y.C.P.L.R. and § 167 N.Y. Insurance Law, McKinney's Consol. Laws, c. 28, discussed at pp. 495, 498, 500, infra.

ERAL ACCIDENT argues that such a result would deprive it of its property without due process of law. Implicit in both of these objections to jurisdiction is the contention that New York in effect has established a direct action without sufficient minimum contacts or without adequate procedural safeguards.

The present controversy is a product of an accident occurring on or about May 8, 1966. The plaintiff, a New York resident, alleges in her complaint that while crossing Saddle River Road at the intersection with Rys Place in Fairlawn, New Jersey, she was struck by an automobile owned by Ethel M. Devinney and being operated at the time by her son, Garry A. Devinney. The Devinneys are residents of New Jersey. As a result of the accident plaintiff Podolsky suffered serious injuries requiring hospitalization in Fairlawn Memorial Hospital in Fairlawn, New Jersey, from the date of the accident through June 10th of that year. Damages sought in the complaint total $75,-000.

On July 21, 1967, the present action was commenced against the petitioners in the Supreme Court of the State of New York in Bronx County by personal service of a summons and complaint. Theretofore, on July 14, 1967, an order of attachment had issued from the above court directing the Sheriff to levy on the property of the defendants. Pursuant to this order the Sheriff attached Ethel M. Devinney's interest in automobile liability policy No. ACF 97–813–32 by delivering a copy of the order to GENERAL ACCIDENT at its offices at 110 William Street in New York City. As this action could have been brought here in the first instance under 28 U.S.C. § 1332 (1964), the defendants chose to remove to this court under 28 U.S.C. § 1441 (1964).[6] The removal was accomplished on August 17 and papers noticing this motion were promptly filed with the clerk of the court on September 12, 1967.

At the outset it should be noted that in a case where jurisdiction is based on diversity of citizenship this court normally is bound to follow the decisions of the court of last resort in New York. Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The District Court must apply the law enunciated by the highest state court even if it believes a given case was wrongly decided. Universal Underwriters Ins. Co. v. Wagner, 367 F.2d 866 (8th Cir. 1966); Klages v. Cohen, 146 F.2d 641 (2d Cir. 1945); Paschall v. Monney, 110 F.Supp. 749 (S.D.N.Y. 1953). However, even in diversity cases, when the decision of the state court is

6. Rule 4(e), Fed.R.Civ.P., provides in pertinent part:

"*Same: Service Upon Party Not Inhabitant Of Or Found Within State.* Whenever a statute of the United States or an order of court thereunder provides for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. Whenever a statute or rule of court of the state in which the district court is held provides * * * (2) for service upon or notice to him to appear and respond or defend in an action by reason of an attachment or garnishment or similar seizure of his property located within the state, service may be made under the circumstances and in the manner prescribed in the statute or rule."

Prior to the adoption in 1963 of Rule 4(e) (2) it was questionable whether this action could have been initiated in this court. Some federal courts had held that attachment and garnishment were not available until jurisdiction over the person of the defendant had been obtained by service of process. See, e.g., Davis v. Ensign-Bickford Co., 139 F.2d 624 (8th Cir. 1944). See generally Carrington, The Modern Utility of Quasi In Rem Jurisdiction, 76 Harv.L.Rev. 303, 305 (1962). However, it was always clear that the present action could be removed to this court. See Davis v. Ensign-Bickford Co., supra; Hatcher v. Hendrie & Bolthoff Mfg. & Supply Co., 133 F. 267 (8th Cir. 1904).

challenged on constitutional grounds, this court must be guided by the decisions of the Supreme Court and appellate courts of the United States rather than the state courts. See Gilmore v. Greene County Democratic Party Executive Committee, 370 F.2d 919, 920 (5th Cir. 1966); Aftanase v. Economy Baler Co., 343 F.2d 187 (8th Cir. 1965); Ark-La Feed & Fertilizer Co. v. Marco Chemical Co., 292 F.2d 197 (8th Cir. 1961); Belanger v. Great American Indemnity Co. of New York, 89 F.Supp. 736, 738 (D.C.La.1950). Therefore, while the rationale of the New York Court of Appeals in Seider v. Roth, supra, deserves our careful consideration, this court is not necessarily bound by that determination. See, e. g., Smayda v. United States, 352 F.2d 251 (9th Cir. 1965), cert. denied, 382 U.S. 981, 86 S.Ct. 555, 15 L.Ed. 2d 471 (1966).

The serious constitutional questions presented in this case have been the subject of several prior determinations in both federal and state courts in New York. In Nationwide Mutual Ins. Co. v. Vaage, 265 F.Supp. 556 (S.D.N.Y. 1967), a three judge court was convened to consider the constitutionality of the attachment procedure approved in Seider v. Roth. While the three judge court dissolved itself on the ground that under 28 U.S.C. § 2283 (1964), it lacked the power to enjoin the pending state court actions, Judge Tyler writing for the panel also observed that the insurance companies had " * * * yet to fully and fairly present their constitutional arguments to the New York courts

at any level." Id. at 562. Under these circumstances the court believed that the companies had not shown the existing state actions could not be prosecuted with full protection of the petitioners' constitutional contentions. See England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 420, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); Government & Civil Employees Organizing Committee CIO v. Windsor, 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894 (1957); Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

■■ Any reasons for abstention by the federal courts, however, have now been removed, for the New York Court of Appeals has upheld the constitutionality of Seider in Simpson v. Loehmann, 21 N.Y.2d 305, 287 N.Y.S.2d 633, 234 N.E.2d 669 (December 29, 1967). In Simpson an infant plaintiff was injured when cut by the propeller of a boat owned by a Connecticut resident in the waters off Madison, Connecticut. Being unable to obtain in personam jurisdiction over the defendant in New York, (see § 302 N.Y.C.P.L.R.), an action was commenced by personal service on the defendant in Connecticut and attachment of an insurance policy issued to the defendant by an insurance company doing business in New York. The defendant moved to vacate the attachment on jurisdictional and constitutional grounds. The Court of Appeals upheld the attachment procedure in a sharply divided opinion.[7] The opinion of the court was written by Chief Judge Fuld and followed

---

7. The Court of Appeals split on several issues present in Simpson v. Loehmann, 21 N.Y.2d 305, 287 N.Y.S.2d 633, 234 N.E.2d 669 (December 29, 1967). Chief Judge Fuld (with whom Judge Van Voorhis concurred) and Judge Keating upheld the constitutionality of the rule in Seider on different theories and in separate opinions which are discussed in the text at p. 493, infra. Judge Burke wrote a dissenting opinion in which Judge Scileppi concurred.

Judges Breitel and Bergan avowedly did not reach the question of Seider's constitutionality. They voted to affirm the

rule on institutional considerations, feeling that judicial consistence on these attachments was more important than the correctness of the attachment procedure itself. In the main, however, their opinion was a strong dissent against the denomination of an insurance policy as a debt. Indeed, at one point Judge Breitel observed that "the theoretical unsoundness of the Seider case and the undesirable practical consequences of its rule require some comment if only, perhaps, to hasten the day of its overruling or its annulment by legislation." Id. at 314, 287 N.Y.S.2d at 640, 234 N.E.2d at 674.

what may be characterized as the traditional approach to the question of jurisdiction. The opinion in simplest terms stated that the insurance policy could fairly be characterized as a debt. The requisites necessary for *in rem* or *quasi in rem* jurisdiction are the presence of the *res* within the state, effective seizure, and adequate notice to its owner.[8] Judge Fuld found these requisites present in *Simpson* for there was personal service upon the owner of the debt and under the rule in Harris v. Balk, 198 U.S. 215, 227, 25 S.Ct. 625, 49 L.Ed. 1023 (1905), the situs of a debt follows the debtor and is subject to garnishment wherever the debtor may be found. As the insurance company was doing business in New York the situs of the debt was New York.[9]

Judge Keating concurring in the opinion of the court expanded upon the theme, also expressed by Judge Fuld, that the procedure sanctioned in Seider v. Roth can be sustained on the ground that the State of New York has a sufficient governmental interest in accidents involving New York plaintiffs to legislate a direct action statute. In Judge Keating's view the procedure in Seider v. Roth accomplishes this result by compelling the insurer, the real party defendant, to defend in this state provided it transacts business here and is thus subject to the jurisdiction of the New York courts. See Simpson v. Loehmann, 21 N.Y.2d at 314, 287 N.Y.S.2d at 640, 234 N.E.2d at 674 (December 29, 1967).

Both of these views must be carefully considered with the caveat that this court should not decide that the New York attachment procedure used in the present case is unconstitutional unless such an adjudication is unavoidable. See United States v. Chibbaro, 361 F.2d 365 (3rd Cir. 1966); Kelly v. Illinois Bell Tel. Co., 325 F.2d 148 (7th Cir. 1963).[10]

The concept of *quasi in rem* jurisdiction is based on the physical power of the state with regard to the *res* or thing attached. See McDonald v. Mabee, 243 U.S. 90, 91, 37 S.Ct. 343, 61 L.Ed. 608 (1917); Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878). As such it must be recognized that the authority of any

---

8. Harris v. Balk, 198 U.S. 215, 227, 25 S. Ct. 625, 49 L.Ed. 1023 (1905); Pennoyer v. Neff, 95 U.S. 714, 722–723, 24 L.Ed. 565 (1878).

9. Chief Judge Fuld did not wrestle with the problem that under his analysis the situs of this *res* is not only New York but every state where the particular insurance company involved is doing business. While in this case no problem of conflicting jurisdiction is presented, it is not difficult to develop a fact situation where a serious problem could arise. Such would be the case were other states to engraft a *Seider* type procedure onto their attachment statutes and were an accident to occur involving plaintiffs who were citizens of New York and one of these jurisdictions. Would not then the debt be situated in both states at the same time? This is one of the things that distinguishes the present procedure from that sanctioned by Harris v. Balk where, although the situs of the debt is changeable, there can never exist more than one situs at any given point in time.

10. It might be noted parenthetically that the lower federal courts have more than a passing interest in the attachment procedure sanctioned in Seider v. Roth. The state courts are admittedly unable to obtain in personam jurisdiction over the defendants now brought before them under the *Seider* procedure. As undoubtedly there exists diversity of citizenship in all cases pursued under the *Seider* procedure, removal will be sought in many of the cases where the jurisdictional amount necessary for federal adjudication is present. This opens up a whole new area of diversity jurisdiction under Rule 4(e) and the federal courts will be administering a state rule of questionable constitutionality. The present question then is of importance to the entire federal court system whose diversity jurisdiction Congress has consistently sought to limit. See, e.g., 28 U.S.C. § 1332(a) (1964), (amended in 1958 substituting $10,000 for $3,000); 28 U.S.C. § 1332(c) (1964) (adding in 1964 a proviso deeming an insurer of liability insurance, in an action in which the insurer is not joined as a party-defendant, a citizen of the state of which the insured is a citizen, as well as the states where the insurer has been incorporated and has its principal place of business).

tribunal is necessarily restricted by the territorial limits of the State in which it is functioning. See, e. g., Hanson v. Denckla, 357 U.S. 235, 246, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). While tangible property rarely poses any difficulty in determining the situs of the *res*, the location and character of intangible assets is often a troublesome problem.[11] In Harris v. Balk, supra, the United States Supreme Court held that a simple debt " * * * clings to and accompanies * * * [the debtor] * * * wherever he goes. * * * It is not a question of possession in the foreign state for possession cannot be taken of a debt * * as tangible property might be taken possession of." Id., 198 U.S. at 222–223, 25 S.Ct. at 626–627. In the decision of that case emphasis was placed on the fact that because a *simple* debt was involved, " * * * Balk could have sued Harris in Maryland to recover his debt, notwithstanding the temporary character of Harris' stay there." Id. at 224, 25 S.Ct. at 627.

More than sixty years have passed since the decision in Harris v. Balk and the question before this court is whether within the confines of due process an insurance policy may be viewed as a simple debt subject to attachment wherever the debtor (the insurance company) may be found. As the New York Court of Appeals saw the problem in *Seider*:

"The whole question, therefore, is whether [the insurer's] contractual obligation to defendant is a debt or cause of action such as may be attached. The * * * policy is in customary form. It requires [the insurer] among other things, to defend [the insured]

in any automobile negligence action and, if judgment be rendered against [the insured], to indemnify him therefor. Thus as soon as the accident occurred there was imposed on [the insurer] a contractual obligation which should be considered a 'debt' within the meaning of CPLR 5201 and 6202." Seider v. Roth, supra, 17 N.Y.2d at 113, 269 N.Y.S.2d at 101, 216 N.E.2d at 314.

Automobile liability insurance policies have evolved through the years into documents representing relatively complex collections of rights and obligations involving the liability carriers, their insureds, claimants, the general public, and the state in which the policy was issued. Although the duty to defend is unquestionably a benefit accruing to an insured by reason of a liability insurance contract, this duty cannot arise until jurisdiction is obtained over the insured.[12] Nor can the obligation to indemnify arise until a judgment has been entered against the insured. Further, when viewed in context, the obligation to defend is an important right of the insurer, essential in protecting its financial interest in the outcome of the litigation.

In addition to the complexity of the obligation to defend, numerous other factors in an insurance contract, such as continuing duties of the insured to his insurance company and the enumerated exclusions present in the policy, militate against characterization as a simple debt.[13] But the fact that there are problems in characterizing an insurance policy as a simple debt does not necessarily import a denial of due process. In the

11. See von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 1121, 1156–59 (1966) (hereafter Jurisdiction to Adjudicate); Comment, Garnishment of Intangibles: Contingent Obligations and the Interstate Corporation, 67 Colum.L.Rev. 550, 551 (1967). See also Comment, 16 Buffalo L.Rev. 769 (1967; Case Note, 8 B.C. Ind. & Com.L.Rev. 147 (1966).

12. Seider v. Roth, 17 N.Y.2d 111, 115, 269 N.Y.S.2d 99, 103, 216 N.E.2d 312, 315

(1966) (Burke dissenting). See Siegel, Civil Practice Commentary, McKinney's Consolidated Laws, 7B, at 27–30 (1967 Supp.) ; Comment, 67 Colum.L.Rev. 550, 555 (1967).

13. An example of one such obligation is the notice provision (Condition 3, Specimen Insurance Policy of General Accident) requiring the assured to forward every demand, summons, etc., received by him in connection with an accident.

absence of harm to the defendants, they would have no standing to complain. In addition, because the litigation is at an early stage there may be some question as to whether a potential harm is sufficiently imminent to sustain objection on due process grounds.

In this court's view, Mrs. Devinney has standing to make the present challenge. *Ex hypothesi* the policy is property or it cannot be attached. Also *ex hypothesi* the present attachment is the first step in an attempted divestiture of the property. Neither is there any question as to the time of Mrs. Devinney's challenge. If the attachment is upheld and the litigation allowed to proceed, she will necessarily lose some portion of her property no matter what course the lawsuit ultimately takes. If the case is defended, under the New York court's own characterization of the property in *Seider*, a part of it must necessarily be consumed in defense of the action.[14] More importantly by virtue of § 320 N.Y.C.P.L.R., appearing in defense of the action submits a defendant to personal jurisdiction in New York.[15] The end result of such submission might be a valid judgment exceeding the policy limits. If, on the other hand, the defendants choose to default, the garnishee loses its ability to control the defense which is an important guarantee under its contract with the assured.[16] Moreover, by refusing to appear, defendants may place their rights to a later defense and indemnity in jeopardy.[17] Thus, a serious

14. At the time of attachment the obligation to defend appears the only conceivable *res*. Certainly under the wording of § 5201 N.Y.C.P.L.R. the Court of Appeals does not consider the obligation to indemnify as matured. Thus, no matter what the outcome, any defense of the action necessarily consumes some of the *res* represented by the obligation to defend. The fact that Mrs. Devinney may prevail on the merits has no bearing because even in so prevailing, the value of the initially attached *res* will be totally consumed. Nor is the fact that counsel fees vis-a-vis the potential liability are a relatively small amount of constitutional moment since counsel fees certainly exceed *de minimus* proportions.

The argument that the property rights of Mrs. Devinney in this *res* are not of the usual sort does not affect her standing to challenge the constitutionality of the present procedure, for the basis of jurisdiction is clearly by way of attachment rather than by direct action against the insurance company. The question of whether Mrs. Devinney or the insurance company is the real party in interest is considered at pp. 497–498, infra.

15. Section 320 N.Y.C.P.L.R. in relevant part provides:

"*Defendant's appearance.*

\* \* \* \* \*

(c) *When appearance confers personal jurisdiction, in certain actions.*

In a case [such as the present one] where the court's jurisdiction is not based upon personal service on the defendant, an appearance is not the equivalent to personal service of the summons upon the defendant if an objection to jurisdiction under paragraphs eight or nine of subdivision (a) of rule 3211, or both, is asserted at the time of appearance by motion or in the answer, unless the defendant proceeds with the defense after asserting the objection to jurisdiction and the objection is not ultimately sustained." See generally, Note, Jurisdiction Service and Appearance Under the CPLR, 37 St. John's L.Rev. 285 (1963).

16. See Specimen Insurance Policy of GENERAL ACCIDENT, Coverage A & B. By virtue of § 167 N.Y.Insurance Law, the insurer may not relitigate the merits of the defaulted case, that being foreclosed by the default. See pp. 498–500, infra, where the operation of § 167 N.Y. Insurance Law is discussed in detail.

17. The present observation is prompted by a dictum in Chief Judge Fuld's opinion in Simpson v. Loehmann, 21 N.Y.2d 305, 309 n. 2, 287 N.Y.S.2d 633, 635, 234 N.E.2d 669, 670 summarized in N.Y.L.J., p. 1, col. 4 (January 24, 1968). In discussing the objection that the *Seider* procedure invites the insured to withhold co-operation, the Chief Judge commented:

"\* \* \* Nor is there any merit to the defendant's argument—which was not raised below—that the attachment impairs contract obligations by 'literally inviting the insured to withhold \* \* \* co-operation.' If the insured does refuse to co-operate, the insurer's recourse is clear: he may withdraw and assert such lack of co-operation as a defense in any action brought against

question arises whether this attachment, which involves a taking of what is *ex hypothesi* property, meets the standards of due process of law.

The landmark case of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) reflected a rethinking on the part of the Supreme Court of traditional notions of due process as it related to jurisdiction.[18] The court there held that "due process requires only that * * * [there be] * * * certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Id. at 316, 66 S.Ct. at 158. See also McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223 (1957).

▇▇▇ It is settled that at the present state of development in American law [19] an attempt to obtain in personam jurisdiction over the present defendants would

not comport with due process, even if the New York statutes purported to allow it.[20] That conclusion follows from the fact that the only nexus this litigation has with New York is the plaintiff's residence. The accident occurred in New Jersey; the defendants are residents of New Jersey; the witnesses are more readily available in New Jersey than in New York.[21] Further, the plaintiff was treated in a New Jersey hospital, presumably by New Jersey physicians, obviating New York's interest, at least in the short run, in the medical care given its citizen.[22] Thus, in this court's view, even under the broadest, functionally-oriented analysis, any attempt to assert personal jurisdiction over these defendants would violate due process.

▇▇▇ It is this inability to obtain in personam jurisdiction over the named defendants, coupled with the fact that an insurance policy is not a simple debt, that makes the attachment particularly

---

him under section 167 of the Insurance Law."

If such a procedure is allowed and if the insured chooses to default, the insurance company will not be liable for the amount of the default up to policy limits. However, a finding by a New York court that the insured failed to cooperate would presumably strip the insured of his coverage in the event he was sued in another state and that state gave the New York court's judgment "full faith and credit." Whether a sister state would be required to give full faith and credit to such a New York judgment on the grounds that the insurance company and its assured are in privity is a complex question which this court is not in a position to resolve. (Professor Siegel has expressed the view that a sister state would not be so bound. See Siegel, Simpson Upholds Seider—Problems for Both Sides, Notes and Views, N.Y.L.J. (January 24, 1968), Part II in a III Part Series). Suffice it to say that if no full faith and credit is required then the *Seider* procedure is a complete waste of time and money for both parties to the litigation. If full faith and credit is required the entire procedure acts as a "velvet covered hammer" coercing the insured to submit to in personam jurisdiction when no basis for the assertion of it is present.

18. See generally, Kurland, The Supreme Court, The Due Process Clause And The In Personam Jurisdiction of State Courts, 25 U.Chi.L.Rev. 569, 577–86 (1958).

19. The German approach to this problem has been more expansive. Although the Federal Republic of Germany is operated under a federal system, section 23 of the German Code of Civil Procedure allows full rather than limited jurisdiction to adjudicate within a district where the debtor's property is located provided the debtor has no domicile within the country. See von Mehren & Trautman, The Law of Multistate Problems: Cases and Materials on Conflict of Laws, p. 673 (1965).

20. See, e.g., the discussion in Hanson v. Denckla, 357 U.S. 235 at 250–255, 78 S. Ct. 1228, 2 L.Ed.2d 1283 (1958).

21. While of minimum significance in this case, the accident having occurred in an adjacent state, this is of increasing importance where the accident occurs in a jurisdiction far removed from the New York forum. One such example is American International Underwriters Corp. v. Victor, 265 F.Supp. 556 (S.D.N.Y.1967), where the accident occurred in Da Nang, Republic of Viet Nam.

22. See Watson v. Employers Liability Assurance Corporation, 348 U.S. 66, 72, 75 S.Ct. 166, 99 L.Ed. 74 (1954) (dictum).

suspect. As noted previously, Mrs. Devinney cannot defend her property without personally appearing in the action, thereby exposing herself to a possible judgment in excess of her policy limits. It is here that the fundamental difference between a simple debt, anchoring the rationale in Harris v. Balk, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905), and the complicated composite of rights and obligations represented by an insurance contract is of crucial importance. The simple debt contemplated by Harris v. Balk is fixed in amount. Because the defendant can have no influence on its size, he faces the simple choice of whether to forfeit this fixed amount and avoid in personam jurisdiction or defend the action and risk a judgment in excess of the value of the *res*. Here, the amount of the debt is not fixed and may be greatly influenced by the defendants' choice of appearance or nonappearance. It is this dilemma, operating to coerce the defendant into an otherwise unattainable submission to personal jurisdiction, which amounts to a denial of fair play and substantial justice vis-a-vis Mrs. Devinney. On balance, then, the mere characterization of an automobile liability insurance policy as a debt without more is not sufficient to satisfy due process. Cf. Home Ins. Co. v. Dick, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930); New York Life Ins. Co. v. Dunlevy, 241 U.S. 518, 36 S.Ct. 613, 60 L.Ed. 1140 (1916).[23]

■ It is at this point that Judge Keating's analysis, which in his words is "a recognition of realities and not fictions," becomes relevant. In Judge Keating's view, the insurance company is the real party in interest, and Mrs. Devinney is merely a fictional representative.[24]

23. "In the light of the emerging concept of personal jurisdiction, the *quasi in rem* procedure is rarely useful to plaintiffs except in cases which the defendant ought not to be asked to defend in the forum chosen by the plaintiff. * * *" *Carrington*, supra, note 6 at 306. See Jurisdiction to Adjudicate, supra, note 11 at 1132, suggesting that Home Insurance stands for the proposition that exercises of jurisdiction that are not clearly justified by the relation of the parties litigant to the forum or by other litigational and enforcement considerations may be declared unconstitutional.

24. Judge Keating's approach in treating Mrs. Devinney as a mere fictional defendant presents difficulties. See pp. 498–500, infra. However, dealing only with his contention that the present contacts with New York would be sufficient to support a direct action against the insurer were the legislature to enact one, such an assertion seems unwarranted.

Judge Keating relies heavily on the dictum in Watson v. Employers Liability Assurance Corporation, 348 U.S. 66, 72, 75 S.Ct. 166, 170, 99 L.Ed. 74 (1954), supporting Louisiana's direct action statute: " * * * Persons injured or killed in Louisiana are most likely to be Louisiana residents, and even if not, Louisiana may have to care for them. Serious injuries may require treatment in Louisiana homes or hospitals by Louisiana doctors. The injured may be destitute. They may be compelled to call on friends, relatives or the public for help. Louisiana has manifested its natural interest in the injured by providing remedies for the recovery of damages. It has a similar interest in policies of insurance which are designed to assure ultimate payment."
However, in the same opinion it was stated:
"If [the motion to dismiss] * * * is granted, Mrs. Watson, but for the direct action law, could not get her case tried without going to Massachusetts or Illinois although she lives in Louisiana and *her claim is for injuries from a product bought and used there.*" (Id. at 72, 75 S.Ct. at 170.) (Emphasis added.)

The above-emphasized contacts now form the basis for in personam jurisdiction in New York and other states. See, e.g., § 302, N.Y.C.P.L.R. However, no direct action statute presently in existence permits a direct action against the insurer based on the minimum contacts suggested by Judge Keating. See La.Stat.Ann., 22:-655 (1959) (accident occurring in the state); Wis.Stat., 204.30(4), 260.11(1) (1959) (accident occurring in the state and confined to automobile torts); R.I. Gen.Laws Ann., 27-7-2 (1956) (action on locally issued policy if the assured cannot be served within the state). See also P.R.Laws Ann., Tit. 26 §§ 2001, 2003(1)

Implicit in this view is the feeling that due process vis-a-vis Mrs. Devinney is not the relevant concern, for if there is a serious threat of a judgment in excess of policy limits, she can always protect herself by refusing to authorize an appearance on her behalf. Judge Keating's analysis goes on to suggest that by virtue of its doing business in New York, and the minimal inconvenience of its defending the action here as opposed to New Jersey, that "service of process on the real party defendant—the insurer—is sufficient to compel it to defend in this State, provided it transacts business here and is thus subject to the jurisdiction of our courts." [25]

Normally, there would be some question in this court's mind as to the standing of the insurance company, which is not a party to the present proceeding, to assert that its property is being taken without due process. However, here there is no question that Judge Keating's analysis, by treating the insurer as the real party in interest under what is, in effect, a judicially created direct action, confers such standing at least for the purposes of examining the constitutionality of the *Seider* attachment procedure. That is, we must either discount Judge

Keating's analysis or examine the real harm to the insurer which might occur as a direct result of the procedure sanctioned under Seider v. Roth.

In any defense made here, other than an attack on jurisdiction, the policyholder will be subject to in personam jurisdiction with resultant liability for any judgment rendered in excess of policy limits (the *res* in the present case). (See § 320 N.Y.C.P.L.R. which specifically abolishes the special appearance in New York.) [26] This places GENERAL ACCIDENT, a fiduciary with regard to its assured, in an unenviable position. In any action where potential liability exceeds the actual insurance coverage, no knowledgeable insured would knowingly subject himself to the personal jurisdiction of a court where the amount which might be recovered could exceed the limits of his insurance coverage. Even if an insured, unversed in the complexities of New York's procedural statutes, should give the insurer no specific instructions with respect to the defense of the negligence action brought against him, the insurer could not, consistent with the best interests of its assured, haphazardly expose him to personal liability in excess of policy limits. [27] If the

(1964) (accident occurring in the jurisdiction). See generally Note, Direct Action Statutes: Their Operational and Conflict-Of-Laws Problems, 74 Harv.L. Rev. 357 (1960); Developments In The Law—State-Court Jurisdiction, 73 Harv. L.Rev. 909 (1960).

25. Simpson v. Loehmann, supra, 21 N.Y.2d at 313, 287 N.Y.S.2d at 639, 234 N.E.2d at 673. In the present state of development of the attachment procedure sanctioned in Seider v. Roth, there appear to be few if any limiting conditions on the bringing of an action in New York. It appears that the plaintiff need not even be a resident of New York. See Nationwide Mutual Ins. Co. v. Vaage, 265 F.Supp. 556 (S.D.N.Y.1967) (plaintiff a Norwegian citizen). Of course, if the plaintiff is not a New York resident he may run the risk of having his action dismissed on the basis of forum non conveniens. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). However, if the plaintiff is a resident of New York, the New York

courts could not dismiss on this basis even if on the facts of the case New York would have little or no interest in the outcome of the litigation. See, e.g., Collard v. Beach, 81 App.Div. 582, 81 N.Y.S. 619 (1st Dept.1903). Federal district courts on the other hand have wide discretion to transfer such cases to other districts in the interests of convenience and justice. 28 U.S.C. § 1404 (1964). The only limitation is that the case be transferred to a district where the plaintiff could have originally brought the action. Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960).

26. See notes 13–17, supra, and accompanying text. We do not here decide whether the present procedure would be constitutional if a limited appearance were allowed.

27. Cf. Brown v. United Fidelity and Guarantee Co., 314 F.2d 675 (2d Cir. 1963); Harris v. Standard Accident & Ins. Co., 297 F.2d 627 (2d Cir. 1961). While the above cases deal with an insurer's duty

situation is adequately explained to the insured, he will most likely refuse to allow the company to enter an appearance on his behalf. This is his right under § 320 N.Y.C.P.L.R. If he chooses not to appear, any unauthorized appearance on his behalf by attorneys retained by the insurance company would be a nullity as against him. See Amusement Securities Corp. v. Academy Pictures Distributing Corp., 251 App.Div. 227, 295 N.Y.S. 436 (1st Dept. 1937); Earl S. Peed Organization, Inc. v. Gray, 40 Misc.2d 471, 243 N.Y.S.2d 111 (Sup.Ct.N.Y.1963).

 If the insured chooses not to appear, there is no way that the insurance company can appear to litigate its interests. Again, the fundamental differences between a simple debt and a highly sophisticated liability insurance policy become apparent. The obligation to defend the insured is not to be regarded simply as a duty owed to the holder of the policy but also as an essential right which the insurance company reserves to itself in order to protect itself against unwarranted liability claims. In normal circumstances the insurance company maintains this right, the only reason recognized for defeasance being an irreconcilable difference of opinion between the insurer and its assured. See Prashker v. United States Guarantee Co., 1 N.Y.2d 584, 593, 154 N.Y.S.2d 910, 917, 136 N.E.2d 871, 875 (1956); Reynolds v. Maramorosch, 208 Misc. 626, 144 N.Y.S.2d 900 (Sup.Ct.N.Y.1955). In that event the insured may conduct the defense but if he acts unreasonably he will forfeit the insurance coverage. In the presently hypothesized situation the insurance company is faced with the prospect of a default judgment. If this default occurs, and if, after damages are fixed and entered at an inquest, the judgment remains unsatisfied for 30 days, the plaintiff may sue GENERAL ACCIDENT directly for the assessed damages up to policy limits. (See § 167 (1) (b) N.Y. Insurance Law.) In that eventuality, GENERAL ACCIDENT could not relitigate the question of liability, that question having been determined by the default. Manard v. Hardware Mutual Casualty Co., 12 A.D.2d 29, 207 N.Y.S.2d 807 (4th Dept. 1960), leave to appeal denied, 12 A.D.2d 891, 212 N.Y.S.2d 1020; Lauritano v. American Fire Ins. Co., 3 A.D.2d 564, 162 N.Y. S.2d 553 (1st Dept. 1957), aff'd without opinion, 4 N.Y.2d 1028, 177 N.Y.S.2d 530, 152 N.E.2d 546 (1958); Abrams v. Maryland Casualty Co., 98 N.Y.S.2d 520 (Sup.Ct. Kings, May 12, 1950), aff'd without opinion, 278 App.Div. 951, 105 N.Y.S.2d 991 (2d Dept.), aff'd without opinion, 303 N.Y. 698, 103 N.E.2d 58 (1951).

In a direct action against the insurer, although several defenses by the insurer are permitted,[28] the only one which appears to be useful under the present circumstances is a defense based on the insured's failure to cooperate in defending the action. However, it seems highly improbable that the New York courts would permit an insurer to raise such a defense when the company itself had advised the insured that it was not in his best interests to appear.[29]

 The dilemma facing GENERAL ACCIDENT in the present case and all insurance companies who are forced to defend actions in New York under the rule of Seider v. Roth is an inextricable one. The basic problem is that GENER-

---

to its assured with regard to settlement of claims which may exceed insurance coverage, we believe the principle that an insurance company must carefully consider the position of its assured is applicable in the present case. For a thorough review of the insurer's obligations vis-a-vis its assured, see Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv.L.Rev. 1136, 1144–45 (1954).

**28.** Such defenses as nonexistence of a valid policy, fraud, lack of notice, and failure of cooperation by the insured are available to the insurer.

**29.** But see note 17, supra. See also *Siegel*, note 17 supra, suggesting that Chief Judge Fuld's dictum is not likely to be followed.

AL ACCIDENT is not a simple garnishee, unaffected except in a collateral way by a finding of liability. It is concerned with the defense of its property which as noted above may be taken without the company ever having an opportunity to be heard.[30]

■ The plaintiff, recognizing the conflicting interests between the insurer and its assured which might lead to a refusal of an authorization to appear, seeks to obviate these difficulties by an offer to stipulate that in no event will damages be permitted to exceed the limits of liability coverage. We do not believe that the constitutionality of a particular rule of law turns on the existence or nonexistence of an offer to stipulate.[31] The fact that a particular stipulation may make it more attractive for the defendants to appear in this action is no guarantee that they will do so. Besides the potential liability, the defendants might prefer not to appear for any number of reasons, e. g., belief that their interests will better be protected in the New Jersey courts. In any event, a proffered stipulation, because it depends on the decision of the individual litigant in each case, is not sufficient to distinguish this case from others in the same category.

We do not lightly determine to put aside a procedure passed on and approved by the New York Court of Appeals on two occasions. However, although the Court of Appeals sought only to protect its citizens, in our view it cannot do so at the expense of residents of a foreign forum whose only connection with this forum is the happenstance of their injuring a New York resident. More importantly, as it may well be in the interest of the insured defendants to refuse to authorize an appearance, the present attachment procedure can operate to deprive the defendants' insurance company of its property without the plaintiff ever having demonstrated liability.

■ The Court of Appeals in *Simpson* sustained the constitutionality of the *Seider* procedure under two basic theoretical approaches. The first treated the problem in traditional terms, maintaining the "fiction" that the insurance policy is attachable property belonging to the named defendant. The second employed a functional analysis that put the property in the hands of the insurance company as the real party in interest. After long and painstaking deliberation this court believes that under either approach there remains a taking which does not comport with "traditional notions of fair play and substantial justice."

In accordance with the foregoing the writs of attachment are ordered vacated and this action is dismissed for want of jurisdiction.

So ordered.

30. "A fundamental requirement of due process is 'the opportunity to be heard.' Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1913). It is an opportunity which must be granted at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

31. A stipulation requires the consent of both parties. Winchester Drive-in-Theatre, Inc. v. Twentieth Century Fox Film Company, 232 F.Supp. 556 (N.D.Cal. 1964); El Hoss Engineering & Transport Co. v. American Independent Oil Co., 183 F.Supp. 394 (S.D.N.Y.1953). The affidavit of Pillon, Attorney for the petitioners in this case, frankly advises this court that Mrs. Devinney will not at this time oppose a personal appearance. However, this does not bind her and she can withdraw the consent before such an appearance is entered on her behalf.