Hinman, J.
The two questions which arise in this case are, first, whether a claim for unliquidated damages for the breach of a contract may be secured by our process of' foreign attachment; and secondly, whether money collected by the sheriff on an execution, is liable to be attached by this process, at [ *108 ] *'the suit of a creditor pf the party for whom- the money is collected. If these questions can both be answered affirmativSly, then, upon the facts of the case, the plaintiffs are entitled to judgment in their favor ; otherwise, the defendant should have judgment. The process is given tocreditors against their debtors, to enable them, to attach the effects of such debtors, in the hands of their agents, attorneys, trustees, &e. Rev. Stat., tit. T, § 229. What then is the meaning of the words “ creditor” and “ debtor,” as used in this statute ? They are undoubtedly words having different meanings, depending upon .the connection in which they are used; so that nothing *89 very satisfactory can result from resorting to mere definitions of the words themselves, or to cases in which they have been restricted in meaning to a narrow and strictly technical sense, or in which they have been held to be used in a more popular sense. Lawyers often speak of a debt as that for which an action of debt will lie, meaning by it a sum of money due by certain and express agreement; but in a less technical sense, says Bouvier, it means any claim for money. And in a still more enlarged sense, it denotes any kind of a just demand. • It is, therefore, equally proper to say of one who is under obligation to discharge some duty, or to pay damages for its non-performance, that he is a debtor, as it is to say the same of one who is under obliga- • tion by bond to pay a sum of money. Hence, the obligation of the original defendants to tow safely the plaintiffs’ logs from New York to New Haven, may, properly enough, be called a debt; and on their neglect to perform it, they may be said to have owed the plaintiffs such reasonable damages as would be a just compensation therefor. In what sense, then, did the legislature use the words “ debtor” and “ creditor,” in the statute respecting foreign attachments ? Now this point seems to us to have been substantially decided in Knox v. The Protection Ins. Co., 9 Conn., 430. It was there held that an unadjusted claim for damages, for a loss on a policy of insurance, might be attached by this process, in a suit against the holder of the policy, under the clause of the statute authorizing debts due *from any person to an absent or absconding debtor [ *109 ] to be attached. In that decision the word “ debts” was held to include the unliquidated claim for a loss on a policy of insurance; and if that decision is correct, it seems hardly credible that the legislature could have used the words “ creditor” and “ debtor” in the same statute in a more restricted sense. If unliquidated debts may be attached by this process, we see no reason for holding that creditors whose debts are unliquidated shall not have the benefit of the statute in order to secure their claims. A debt" arising from the breach of a contract to transport property safely, is as definite, surely, as the damages recoverable for a loss of property insured. The rule for the assessment of the damages is certain in both cases ; and the only uncertainty is as to the amount of damages recoverable ; and this arises from the uncertainty of the proof, which is an uncertainty attaching equally to all unliquidated claims. It appears to us, therefore, that this objection to the pláintiffs’ claim ought not to prevail.
2. The defendant collected the money in his hands, as sheriff of the county, on an execution in favor of the debtors of the *90 plaintiffs. Does this excuse him from liability to this process ? He comes within the letter of the statute, provided he can with propriety be considered as the agent of the execution creditors. He received the execution from them, and took his instructions from them ; and when he had collected the executions, he held the money subject to their order ; and, had he paid it before the attachment was served, he would have paid it over to them directly. Unless then there is some rule of law or of policy to pevent it, it would seem that he must be their agent 'and trustee. Indeed, there is no way in which this result can be avoided, except by resorting to what, in Connecticut certainly, is a fiction, and treating him as the agent of the law, or of the court, rather than of the execution creditor. That he is so considered in Massachusetts and in some other states, is true. And in Connecticut it was formerly decided that money collected by an officer was not liable to attachment. Willes v. Pitkin, 1 Root, 47. Geary v. Shepard, id., 544. It is not a little remarkable, [ *110 ] *however, that in the first of these cases the court give a reason for their decision, which must strike every one, we think, as a better reason for deciding the other way. The court say that the money was not liable to be taken, “ because the money received and endorsed on the execution by the officer is his special property, for which he is liable to the person to whom it is due.” Now every agent has a special property in the money of his principal which he has in his hands, or he would be unable to protect it against the acts of strangers. And the fact that he is liable for it to the person to whom it is due, shows that he is, in fact, that person’s agent, and therefore not the mere agent of the law. The case of Geary v. Shepard was decided upon the authority of Willes v. Pitkin, and adds little or nothing to its weight. We think, therefore, we are at liberty to decide the case upon principle, without further reference to these authorities. The decisions undoubtedly were influenced to some extent, as probably was the case with the Massachusetts decisions also, by what was deemed to be the impolicy of subjecting public officers to the annoyance and expense consequent upon holding them responsible to third persons on this process. In this respect they conflict with our favorite policy of subjecting every man’s property to liability to be taken for the payment of his debts, to which end all our attachment laws are aimed. It was also on grounds of public policy that our courts decided that a public loan officer, an executor, and a state attorney, were exempt from liability to this process, for moneys in their hands by virtue of their respective offices. But these decisions have never been perfectly satisfactory, and the tendency *91 of more modern cases is the other way ; and such seems to be the tendency of our legislation, as evinced by the great extension which has been given to the process of foreign attachment within the past few years, particularly in subjecting legacies and distributive shares of deceased persons’ estates, in the hands of executors and administrators, to its provisions, after the courts had decided against any such liability. Bray v. Wallingford, 20 Conn., 419. We can not therefore feel that the defendant’s *ease is at all aided by any considerations [ *111 j drawn from public policy.
Perhaps it is not unworthy of notice, that decisions against the liability of sheriffs may have been influenced by considerations drawn from what is, or was supposed to be, the theory of the English law in respect to the sheriff’s duty in the service of executions. The form of an English execution, as contrasted with ours, would give countenance to such a suggestion.
In the English writ of Fieri Facias, (see Appendix to 3d BI. Com., p. 26,) the officer is commanded to make the sum demanded in it, and to have the money before the court, to render to the execution creditor, together with the writ. And when he lias collected the money, or made it, as it is called, he makes return of the fact, and that he has it ready in court, or, as the form is, “ before the Lord the King at Westminster, at the day, Ac., as it is within commanded.” According to this form, the money appears to be in the sheriff’s hands as the agent of the court. And in theory, probably there is an order to pay it over to the creditor, before it can be demanded. One reason for this is, that satisfaction may be entered on the record, and further vexation of the defendant prevented. 1 Sellon’s Prac., 545.
By our form, the officer is directed to pay the money collected to the creditor directly. And although it may be true that such a payment in England would be good, because the creditor is the party eventually entitled to it, still, the fact that, in theory, it is considered as brought into court, is sufficient to account for the fact that the sheriff is considered and treated as the agent of the court rather than of the party. But where the sheriff takes the execution from the creditor, and acts under his instructions, and is directly accountable to him, we see no good reason why he should not be treated in law, as he undoubtedly is in fact, as his agent and trustee. Such seems to be the law in Vermont and New Hampshire, and appears to us to conform more to the general policy of our law. Hurlburt v. Hicks, 17 Verm., 193. Woodbridge v. Morse, 5 N. Hamp., 519.
*We therefore advise the superior court that the plaintiffs are entitled to judgment.on the facts found.
*92 *In this opinion the other judges concurred.
Judgment for plaintiffs advised.