**Mary PASSKOWSKI, Plaintiff,**

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.**

**Civ. 7174.**

United States District Court
D. Connecticut.

April 5, 1960.

820

Samuel Gruber, of Gruber & Turkel, Stamford, Conn., for plaintiff.

Bruce W. Manternach, of Robinson, Robinson & Cole, Hartford, Conn., for defendant.

CLARK, Circuit Judge (sitting as District Judge pursuant to statutory designation).

This is an action in the diversity jurisdiction of the court brought by a Connecticut resident against a New Jersey insurance company to recover $5,000 under a group life insurance policy. The defendant had issued the policy, Exhibit 1 herein, on the lives of employees of Columbia Broadcasting System, Inc. (CBS). Plaintiff is the designated beneficiary on certificates of insurance issued under this policy to her husband, Bruno F. Passkowski, now deceased, who was employed from 1942 to 1957 by Columbia Records, Inc., a CBS subsidiary.

Since July 15, 1956, CBS employees have been insured for $4,000, for which amount premiums are paid by the company. Mr. Passkowski also carried an additional $1,000 coverage, Exhibit 2 herein, for which at least a portion of the premium was defrayed through payroll deduction. Thus it is common ground that he was insured for $5,000 while employed. The dispute involves the amount of coverage to which Passkowski, as a retired employee, was entitled at the time of his death. Defendant asserts that its liability under the policy is limited to $500, which amount has been paid.

In addition to the insurance plan, CBS employees were covered by a retirement pension plan which was also insured by the defendant. This plan provided for voluntary retirement between the ages of 65 and 68. Passkowski, who was born August 31, 1891, applied on June 14, 1957, for such retirement, effective June 30, 1957, and signed the "Notice of Retirement Status," Exhibit A. In order to initiate the annuity benefits, to continue during the employee's life, the employer notified the defendant of Passkowski's retirement status by letter of July 22, received July 23, 1957, enclosing the notice, Exhibit A; this notification had no connection with coverage under the group insurance plan. Passkowski died on August 7, 1957, thirty-eight days following his retirement.

Since the issue primarily turns upon the interpretation of the policy, Exhibit 1, pertinent provisions, amended as of July 15, 1956, are as follows:

"Plan of Insurance

"Each Employee shall be eligible for insurance under the Policy from the effective date of the Policy or the completion of two months of continuous service, whichever is later.

| Classification | Table Amount of Insurance* |
|---|---|
| All Employees of the Columbia Records Division  * * *......$4,000 |

* The amount of insurance on each insured Employee retired by the Employer on or after April 1, 1950 shall, on and after the later of June 1, 1954 and his date of retirement and while he remains insured under the Policy, be $500 * *.

\* \* \* \* \* \*

"Should an Employee's insurance be continued during disability, leave of absence, temporary lay-off or retirement, the amount of his insurance shall be the

amount for which he was insured on his last day of work, unless otherwise stated above.

\* \* \* \* \* \*

"Termination of Individual Insurance

"The insurance on an Employee shall automatically terminate \* \* \* if his employment with the Employer terminates, or if this Policy terminates. If, however, the Employee is entitled by the terms of this Policy to convert all or part of his insurance to an individual policy but dies during the thirty-one day period following termination of insurance, the amount of insurance which might otherwise have been converted will be paid as a claim under this Policy, whether or not application for conversion has been made.

"Termination of employment shall, for all purposes of this Policy, be deemed to occur upon cessation of active work on a full-time basis with the Employer, except that an Employee who is disabled, on leave of absence, temporarily laid off, employed on a part-time basis, or retired will nevertheless be considered as still employed on a full-time basis until the Employer, acting in accordance with rules precluding individual selection, terminates the Employee's insurance by notifying the Insurance Company to that effect or by discontinuing premium payments for his insurance. \* \* \* "[1]

As the notice of termination by the employer to the defendant herein specified had not been given, the deceased remained insured following retirement. Thus the printed form, "Notice of Retirement Status," Exhibit A, refers only to the annuity plan; and both parties base their contentions upon the assumption of continued insurance. Plaintiff urges that, since Passkowski was therefore "considered as still employed on a full-time basis," he was entitled to full coverage. Defendant, however, points to the "Plan of Insurance" clause under which $500 coverage is provided for a retired employee "while he remains insured under the policy." The court finds the latter position the more persuasive.

The group policy initially was issued by defendant to Columbia Records, Inc., on April 1, 1950. It is a form contract which since its execution has been subject to a number of amendments, including the steady extension of coverage ultimately to include substantially all CBS employees. It is thus necessary to consult the typewritten "Plan of Insurance" provision of the policy to ascertain the coverage at any given time; and the continuation of the insurance of retired employees was the natural and logical means of effecting the desired extension of coverage under this style of contract. In view of the large number of active

1. Other material provisions include:
"Conversion Privilege
"If an Employee's insurance ceases by reason of termination of employment \* \* \*, the Employee shall be entitled to convert all or part of his insurance, without evidence of insurability, to an individual policy of life insurance, provided written application and the first premium payment are made to the Insurance Company within thirty-one days from the date of such termination. \* \* \*

\* \* \* \* \*

"Employee's Certificate
"The Insurance Company will issue to the Employer, for delivery to each Employee insured hereunder, an individual certificate which shall set forth (a) the rights and conditions of the section 'Conversion Privilege', (b) the insurance protection to which the Employee is entitled, including the insurance protection during the period allowed for conversion, and (c) to whom the benefits are payable.

\* \* \* \* \*

"The Contract—Incontestability

\* \* \* \* \*

"This Policy may be amended at any time, without the consent of the Employees insured hereunder or of their Beneficiaries, upon written request made by the Employer and agreed to by the Insurance Company, but any such amendment shall be without prejudice to any claim arising prior to the date to which premiums have been paid. \* \* \* "

The above three paragraphs, together with the last three paragraphs quoted in the text, were parts of the printed form, while the "Plan of Insurance," as amended, was typewritten. There were later amendments after July 15, 1956, not affecting the deceased's status.

and retired workers who must rely or have relied upon the terms of the policy, the contract should be interpreted as it would be understood by the average employee. An examination of the provisions of the policy, as well as of the insurance certificates furnished each employee, compels the conclusion that an employee, upon retirement, has thirty-one days in which to convert to an individual policy, and that at the end of this period he is entitled to $500 coverage under the group policy and nothing more unless he has exercised the privilege of conversion. Although it is unfortunate that Passkowski died within such a brief period after his $5,000 coverage lapsed, there seems to be no escape from the fact that the policy must be construed so as to effectuate the manifested purpose of the parties thereto in the light of the reasonable expectations of the employees.

Plaintiff also urges that if a retired employee is considered as still insured, although his coverage is reduced to $500, such employee is deprived of the privilege of converting to an individual policy, since conversion can only follow termination of employment. It does not appear to the court, however, that the policy so limits the privilege of conversion. The "Termination of Individual Insurance" and "Conversion Privilege" clauses were printed provisions of the original policy, while the $500 coverage for retired employees was added by an amendment of the policy on June 1, 1954. Thus under the policy as initially executed, retired employees were not provided with any continuing coverage.

The standard provision that a retired employee is considered as still insured in the absence of notification to the insurer was seemingly included in contemplation of the contingency that the employer desired to provide continuing coverage for employees following their retirement. That such coverage was envisioned only on a group, rather than an individual, basis is indicated by the policy provision that termination of insurance must be "in accordance with rules precluding individual selection." In 1954 the employer decided to provide such coverage for retired employees, but limited in amount to $500. In this amendment no intention was manifested to limit the employees' conversion privilege. Rather, in implementing the policy provisions, the parties have issued the $500 certificate thirty-one days following retirement, as allowance for the conversion period. If a retired employee failed to exercise the privilege during this period, his coverage was thus reduced.

Plaintiff relies upon Emerick v. Connecticut General Life Ins. Co., 120 Conn. 60, 179 A. 335, 105 A.L.R. 413, and Perkins v. Eagle Lock Co., 118 Conn. 658, 174 A. 77. In these cases employees died while temporarily laid off or absent by reason of illness. The court held that termination of employment had not occurred because the employees had not been notified to this effect. Here, however, Passkowski voluntarily applied for retirement so that no question arises as to his knowledge of the termination of employment. Further, he had been furnished with a group life insurance certificate, Exhibit 2, which contained in substantially similar language the "Termination of Individual Insurance" and "Conversion Privilege" clauses quoted above, and thus was fully apprised of his rights under the policy.

The insurance certificate also provided that insurance on a contributory basis would terminate if any contribution was not made when due. No deduction was made from Passkowski's final pay check, so that the additional $1,000 coverage also terminated thirty-one days following retirement. Thus there is no evidence that Passkowski was misled as to the amount or extent of his coverage.

It follows that the plaintiff cannot recover, and the clerk is directed to enter judgment forthwith for defendant on the merits. This opinion constitutes the court's findings of fact and conclusions of law under Fed.R.Civ.P. 52(a).