**Annette HEYMAN, Individually, Annette Heyman, as Executrix of the Estate of Lazarus S. Heyman, Late of Danbury, and Prudential Management Company, a Connecticut corporation, Plaintiffs,**

v.

**Robert S. KLINE, Defendant.**

**Civ. No. B–12.**

United States District Court,
D. Connecticut.

March 19, 1970.

See also D.C., 344 F.Supp. 1088; 344 F.Supp. 1110; 344 F.Supp. 1118.

David Goldstein, Jacob D. Zeldes, Elaine S. Amendola and Charles M. Needle, of Goldstein & Peck, Bridgeport, Conn., for plaintiffs.

Thomas J. Dolan, of Coles, O'Connell & Dolan, Bridgeport, Conn., John R. Bush, of MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., and Harvey B. Oshins, White Plains, N.Y., for defendant.

## MEMORANDUM OF DECISION DENYING DEFENDANT'S MOTION TO DISMISS

TIMBERS, Chief Judge.

### QUESTIONS PRESENTED

Defendant's motion to dismiss, pursuant to Rule 12(b)(2), Fed.R.Civ.P., for lack of in personam jurisdiction over defendant in this diversity action presents the questions (1) whether defendant, a resident of Florida, is amenable to service of process in Florida under Connecticut's longarm statute, Conn.P.A. No. 744 (Jan.1969), *formerly* Conn.Gen. Stat. § 52–59a (1958); and (2) whether service was properly made on defendant in Florida under Conn.P.A. No. 635 (Jan.1969), *formerly* Conn.Gen.Stat. § 52–59a (1958).

For the reasons stated below, the Court holds that it does have in personam jurisdiction over defendant. The motion to dismiss is denied.

### PARTIES

Plaintiff Annette Heyman is a Connecticut citizen suing individually and as executrix of the estate of the late Lazarus S. Heyman of Danbury. Plaintiff Prudential Management Company is a Connecticut corporation with its principal place of business in Connecticut. Defendant Robert S. Kline is a citizen and resident of Florida. The matter in controversy exceeds $10,000, exclusive of interest and costs.

### FACTS

The controlling facts in chronological order are as follows.

On March 31, 1968, plaintiff's[1] decedent, Lazarus S. Heyman, entered into a written employment contract with defendant which was executed in Florida. Under this contract defendant was to perform services in connection with the acquisition and development of commercial and industrial real estate, particularly the development of certain real estate in Hillsborough County, Florida (the Tampa property). The contract provided that defendant was to receive an annual salary and expenses; and that at the end of each year of employment plaintiff's decedent would determine what, if any, bonus or participation in the equity of any real estate venture undertaken by defendant on behalf of plaintiff's decedent defendant would receive.

On June 15, 1968, plaintiff, as executrix of the estate of Lazarus S. Heyman, entered into an extension agreement granting her an option to purchase the Tampa property on or before August 15, 1968. On July 16, 1968, she assigned to defendant a 15% interest in this option.

---

[1] Unless otherwise stated, when the singular "plaintiff" is referred to herein, the reference is to plaintiff Annette Heyman; and when the plural "plaintiffs" are referred to herein, the reference is to both named plaintiffs, i. e. Annette Heyman and Prudential Management Company.

On September 9, 1968, plaintiff entered into a written employment contract with defendant, executed at Danbury, which superceded the original contract.[2] Under the new contract defendant was to perform services in connection with all phases of plaintiffs' real estate business; he was to perform these services at plaintiffs' Danbury office and was to take up residence in the Danbury area; he was to receive an annual salary and expenses; he could participate, to the extent of 15%, in the equity of any real estate venture which plaintiffs entered into if he indicated his intention so to invest and participate at the inception of the venture and if he furnished the necessary capital. The contract stated that it was the understanding of the parties that defendant would invest in and participate in the equity of the Tampa property venture to the extent of 15%.

Plaintiff acquired title to the Tampa property on December 9, 1968.[3]

On January 17, 1969, plaintiff discharged defendant, allegedly for cause.

On February 1, 1969, plaintiff entered into a lease (the lease) with Tampa Mall, Inc., under which she has an interest in an adjoining tract of real estate (the adjoining tract); and pursuant to the lease plaintiff's tenant is required to commence and proceed to construct an enclosed mall regional shopping center by August 1, 1970.

On September 16, 1969—thirteen months after expiration of the option and eight months after his discharge by plaintiff for cause—defendant recorded on the official records of Hillsborough County plaintiff's assignment to him of a 15% interest in the option on the Tampa property.

On February 12, 1970, plaintiffs filed a verified complaint in this Court alleging that defendant breached his employment contract and committed various tortious acts injurious to plaintiffs, some of which were committed within, some outside of, Connecticut.[4] The relief sought is (i) a declaratory judgment that defendant has no right, title or interest in the Tampa property, the lease, or the adjoining tract, or, if the Court should find that defendant has an interest, a declaratory judgment as to the extent of such right, title or interest; (ii) temporary and permanent injunctions enjoining defendant, his agents, servants, attorneys, nominees

2. The contract of September 9, 1968 states that "[t]his contract shall supercede and render null and void a previous contract entered into in between you and Lazarus Heyman dated March 31, 1968."

3. The complaint alleges that plaintiff acquired fee title to the Tampa property on December 9, 1968. Defendant's memorandum of March 2, 1970 alleges that she acquired fee title to this property on October 22, 1968.

4. The complaint alleges (¶6) the following grounds for defendant's discharge:
   "(a) he incurred excessive and fraudulent expenses;
   (b) he failed to utilize his best efforts for plaintiffs and plaintiff Annette Heyman's decedent;
   (c) he failed to work solely and exclusively for plaintiff Annette Heyman and plaintiff Annette Heyman's decedent;
   (d) he solicited a kickback from a person with whom he had business relations on behalf of plaintiff Annette Heyman and plaintiff Prudential Management Company;
   (e) he displayed insubordination to plaintiff Annette Heyman and plaintiff Prudential Management Company;
   (f) he generally conducted himself so as to cause other employees of plaintiff Annette Heyman, plaintiff Prudential Management Company and affiliated corporations to terminate their relationship with plaintiff Annette Heyman, plaintiff Prudential Management Company and affiliated corporations; and
   (g) he announced that he considered himself not bound by the agreement with plaintiff Annette Heyman and would not hesitate to avoid his obligations under the agreement, all tortious acts within and without the State of Connecticut, causing injury to plaintiffs, in violation of his fiduciary duty to plaintiffs and in breach of his agreements with plaintiff Annette Heyman and plaintiff Annette Heyman's decedent."

and persons with whom he is in active concert or participation from initiating any legal proceedings, filing any documents on land records, or making any assertions with financial institutions or Tampa Mills, Inc., plaintiff's tenant, in which he claims any right, title or interest in the Tampa property, the lease or adjoining tract; (iii) damages in the amount of $100,000; and (iv) such other relief as the Court may deem equitable.

Simultaneously with the filing of the complaint on February 12, 1970, plaintiffs presented to the Court an application for a temporary restraining order, pursuant to which the Court, on February 12, 1970, at 4:08 P.M., issued a temporary restraining order granting temporarily the same injunctive relief referred to in the preceding paragraph; and at the same time the Court signed an order to show cause bringing on plaintiffs' motion for a preliminary injunction to be heard on February 20, 1970.

On February 12, 1970, the Court also granted plaintiffs' motion to appoint Albert A. Estes, Sr. to serve the Summons, Complaint, Application for Temporary Restraining Order, Temporary Restraining Order, and Order to Show Cause upon defendant.

Mr. Estes' return of service, endorsed on the original summons issued by this Court, certifies that he served these papers on defendant personally at his residence in Largo, Florida, on February 12, 1970, at 11:30 P.M.; and Mr. Estes so testified before the undersigned on March 3, 1970.

Defendant, however, has filed affidavits of himself and others stating that he was not at home at the time and that his wife found the papers on the doorstep of his home the following morning.

On February 13, 1970, defendant, through his Florida attorney, John R. Bush, Esq., caused a *lis pendens* to be filed on the land records of the County of Hillsborough, Florida, applicable to the Tampa property which was the subject of this Court's temporary restraining order issued and served the day before.

On February 13, 1970, or shortly thereafter, defendant, through his Florida attorney, commenced a lawsuit against plaintiff by filing a complaint in, and causing a summons to be issued by, the Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida, alleging that defendant has a 15% interest in the Tampa property and seeking to have plaintiff declared a constructive trustee of the Tampa property and ordered to convey a 15% interest in this property to defendant.[5]

On February 20, 1970, defendant filed in this Court a motion to dismiss, pursuant to Rule 12(b)(2), Fed.R.Civ.P., for lack of in personam jurisdiction. On the same day, a brief chambers hearing was held before Judge Blumenfeld, the upshot of which was that all pending matters, including those brought on by this Court's order to show cause of February 12, 1970 and defendant's motion to dismiss, were ordered continued to February 24, 1970 before the undersigned.

On February 24, 1970, plaintiffs filed a motion that defendant be held in contempt for violation of the temporary restraining order issued by the Court on February 12, 1970.

At a hearing before the undersigned on February 24, 1970, the temporary restraining order was continued by consent to March 3, 1970, to which date the hearings on all pending motions were continued.

On March 3, 1970, a hearing was held before the undersigned on defendant's motion to dismiss. The Court heard the testimony of one witness and oral arguments by counsel for both sides. Deci-

---

5. The complaint in the Florida action was entitled "ACTION FOR DECLARATION OF CONSTRUCTIVE TRUST, SPECIFIC PERFORMANCE, DAMAGES FOR BREACH OF CONTRACT, PUNITIVE DAMAGES, ATTORNEYS' FEES".

sion was reserved. Hearings on the remaining motions were continued until after the Court rendered a decision on defendant's motion to dismiss. In the meanwhile, with the consent of the parties, the Court ordered continuation of the temporary restraining order until all pending motions were decided.

## OPINION

*Applicability of Connecticut Long Arm Statute*

■■ In this diversity action, it is clear that a federal court must apply the state standard for determining a defendant's amenability to service of process. Arrowsmith v. United Press International, 320 F.2d 219 (2 Cir. 1963) (en banc), overruling Jaftex Corp. v. Randolph Mills, Inc., 282 F.2d 502 (2 Cir. 1960); Bomze v. Nardis Sportswear, Inc., 165 F.2d 33, 35 (2 Cir. 1948). Rule 4(e), Fed.R.Civ.P., supplemented by Rule 4(d)(7) and Rule 4(f), Fed.R.Civ. P., permits service to be made upon a party not an inhabitant of or found within the state in which the district court is held under the circumstances and in the manner prescribed by statute or rule of the state in which the district court is held. These federal rules contemplate service under state long arm statutes in actions brought in a federal district court. United States v. First National City Bank, 379 U.S. 378 (1965); Arrowsmith v. United Press International, supra; Deveny v. Rheem Manufacturing Co., 319 F.2d 124 (2 Cir. 1963).

Thus, the amenability of defendant, a Florida resident, to service of process in Florida depends on the applicability of Connecticut's long arm statute, Conn. P.A. No. 744 (Jan. 1969) and Conn. P.A. No. 635 (Jan. 1969), *formerly* Conn. Gen.Stat. § 52–59a (1958). Conn.P.A. No. 744 in relevant part provides:

"Section 1.

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, or foreign partnership or his or its executor or administrator, who in person or through an agent: (1) [t]ransacts any business within the state; or (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from such act; or (3) commits a tortious act without the state causing injury to person or property within the state. . . . "

And Conn. P.A. No. 635 in relevant part provides:

"A person domiciled in or subject to the jurisdiction of the courts of this state or his executor or administrator, may be served with process without the state, in the same manner as service is made within the state, by any person authorized to make service by the laws of the state, territory, possession or country in which service is to be made or by any duly qualified attorney, solicitor, barrister or equivalent in such jurisdiction."

■ In this case the Court holds that jurisdiction is properly founded upon three grounds under Conn. P.A. No. 744. First, the instant action may fairly be said to arise out of defendant's transaction of business within the state within the meaning of Conn.P.A. No. 744 § 1(1) inasmuch as plaintiffs allege that the conduct which gave rise in part to the instant action was defendant's breach of an employment contract with plaintiffs, Connecticut citizens, which was executed in Connecticut and which was to be performed in Connecticut. Second, the instant action may fairly be said to arise out of tortious acts committed by defendant in Connecticut within the meaning of Conn.P.A. No. 744 § 1(2) inasmuch as plaintiffs allege that defendant committed various tortious acts some of which they claim were committed in Connecticut. Third, the instant action may fairly be said to arise out of tortious acts committed without the state causing injury to person or property in the state within the

**1086**

meaning of Conn.P.A. No. 744 § 1(3) inasmuch as plaintiffs allege that defendant committed some of the aforementioned tortious acts in Florida to the detriment of plaintiffs in Connecticut.

The application of Conn.P.A. No. 744 to the instant action does not contravene federal due process requirements. Defendant has sufficient contacts with the state to satisfy these requirements as construed by International Shoe Co. v. Washington, 326 U.S. 310 (1945); McGee v. International Life Insurance Co., 355 U.S. 220 (1957), and their progeny. Here it is claimed that defendant breached a contract executed in Connecticut and to be performed in Connecticut; that he committed tortious acts within and without Connecticut injurious to plaintiffs in Connecticut. As the Court of Appeals for this Circuit has stated in Buckley v. New York Post Corp., 373 F.2d 175 (2 Cir. 1967):

> "[T]he due process clause imposes no bar to a state's asserting personal jurisdiction . . . in favor of a person within its borders who suffers damage from the breach of a contract the defendant was to perform there or a tort the defendant committed there." 373 F.2d at 181.

■ Defendant here does not assert that the Court lacks in personam jurisdiction over a non-resident defendant under Conn.P.A. No. 744 in a breach of contract action arising out of the breach of a contract executed in Connecticut and to be performed in Connecticut, or in a tort action arising out of tortious acts committed within Connecticut or without Connecticut causing injury to a person within Connecticut. Rather, he claims that the instant action in reality is an action to quiet title to the Tampa property arising out of plaintiff's assignment to him of an interest in the option to this property; and he maintains that Conn.P.A. No. 744 does not confer upon this Court in personam jurisdiction over a non-resident defendant in such an action. The sole

basis for this characterization of the instant action by defendant is that plaintiffs seek equitable relief in the form of preliminary and permanent injunctions restraining defendant from taking certain actions with respect to the Tampa property and declaratory relief in the form of a declaration of the rights of the parties to this action with respect to that property.

Defendant's contention to the contrary, the instant action does not involve an unmixed question of title. The assignment of interest, out of which defendant asserts the instant action arose, was an outgrowth of and connected with the employment relationship between plaintiffs and defendant as reflected in two written employment contracts. Defendant mistakenly equates the nature of this action with the nature of the relief sought by plaintiffs. The fact that plaintiffs seek equitable and declaratory relief with respect to the Tampa property does not transform into a quiet title action what clearly is a breach of contract and tort action within the purview of Conn.P.A. No. 744.

■ The Court holds that it does have personal jurisdiction over defendant under the Connecticut long arm statute; and, having such jurisdiction over defendant, may grant the requested relief with respect to the Tampa property even though such property is beyond the Court's territorial jurisdiction. See New Jersey v. City of New York, 283 U.S. 473, 482 (1931); Massie v. Watts, 10 U.S. (6 Cranch) 148 (1810); United States v. Ross, 302 F.2d 831, 834 (2 Cir. 1962); S. E. C. v. Minas De Artemsia, S. A., 150 F.2d 215, 217 (9 Cir. 1945); Mandley v. Isacher, 121 F.2d 875 (D.C.Cir. 1941); Miller & Lux Incorporated v. Nickel, 149 F.Supp. 463, 466–67 (N.D.Cal.1957).

*Manner of Service*

There remains the question whether the Court lacks in personam jurisdiction over defendant as the result of al-

leged improper service of process. Defendant challenges the validity of service on the ground that the Summons, Complaint, Application for Temporary Restraining Order, Temporary Restraining Order, and Order to Show Cause were left at his home in Florida rather than manually delivered to him. Plaintiffs contend that manual delivery was made.

The Court finds, after an evidentiary hearing, that process was served personally on defendant at his home in Largo, Florida, on the night of February 12, 1970 by Albert A. Estes, Sr. This finding is based upon the Court's determination of the credibility of Mr. Estes whose demeanor the Court had an opportunity to observe while he was on the witness stand at the hearing on March 3, 1970.

Assuming, arguendo, however, that defendant was served in the manner he alleges, rather than as plaintiffs contend, the manner of service admitted by defendant was proper. Conn.P. A. No. 635 (Jan. 1969) provides that service of process on a non-resident over whom there is jurisdiction under Conn. P.A. No. 744 (Jan. 1969) is to be made "in the same manner as service is made within the state." Under Connecticut law, abode service as well as personal service is sufficient service of process to give the Court in personam jurisdiction. Conn.Gen.Stat. §§ 52–54, 52–57 (1958); Smith v. Smith, 150 Conn. 15, 20 (1962). Nor do the Federal Rules of Civil Procedure in any way invalidate the service of process in the instant case.

For the reasons stated above, defendant's motion to dismiss must be denied.

ORDER

ORDERED, ADJUDGED and DECREED that:

(1) Defendant's motion to dismiss for lack of in personam jurisdiction is denied.

(2) On Wednesday, March 25, 1970, at 10 A.M., at the Bridgeport seat of this Court, a hearing will be held on

(a) Plaintiffs' motion for contempt, and

(b) Plaintiffs' motion for preliminary injunction.

(3) Defendant Robert S. Kline and his Florida attorney, John R. Bush, Esq., are directed personally to be present at the hearing ordered in paragraph (2) above.

(4) Defendant Robert S. Kline and his Florida attorney, John R. Bush, Esq., are ordered forthwith (a) to remove the *lis pendens* from the land records of Hillsborough County, Florida, applicable to the Tampa property, and (b) to withdraw the lawsuit commenced against plaintiff in the Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida—both referred to at page 1084, *supra*.[6]

---

The foregoing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.

---

6. The provision of the Court's order set forth in paragraph (4) is in accordance with the representation made to this Court by defendant's Florida attorney, John R. Bush, Esq., in open court on March 3, 1970, namely, that the Florida action and the *lis pendens* referred to would be withdrawn and removed immediately in the event this Court should deny defendant's motion to dismiss the instant action for alleged lack of in personam jurisdiction. That motion was formally denied on March 18, 1970, pursuant to advance informal notice given by the undersigned to counsel for both sides on March 17, 1970. See this Court's ORDER DENYING DEFENDANT'S MOTION TO DISMISS, filed March 18, 1970.