Bernard Samuel SYKES

v.

William H. BEAL, Jr. and C. Harrell, Inc.

Civ. No. H–74–379.

United States District Court,
D. Connecticut.

April 16, 1975.

M. Donald Cardwell, Hartford, Conn., for plaintiff.

Frank DeNezzo, Hartford, Conn., for defendants.

## RULING ON MOTION TO DISMISS

BLUMENFELD, District Judge.

The plaintiff in this suit was allegedly injured in an automobile accident on the New Jersey Turnpike by a tractor-trailer rig driven by the defendant Beal in the course of his employment with the defendant C. Harrell, Inc. Both of the defendants are citizens of New Jersey; Sykes is a citizen of Connecticut. The case is in this court pursuant to 28 U.S. C. § 1332 (1970); more than $10,000, exclusive of interest and costs, is assertedly in controversy.

Service was effected on the defendants in New Jersey: Mr. Harrell was served as an officer of his corporation, and a copy of the summons and complaint were left with someone of suitable age and discretion at the home of Mr. Beal. Both defendants challenge this service, moving to dismiss under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. The defendants correctly point out that personal service outside of this ·district is improper except pursuant to a state long-arm statute, Fed.R.Civ.P. 4(e); Heyman v. Kline, 344 F.Supp. 1081, 1087 (D.Conn.1970), rev'd on other grounds, 456 F.2d 123 (2d Cir.), cert. denied, 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972), or in the limited class of cases enumerated by Fed.R.Civ. P. 4(f), which is not apposite here.

The plaintiff does not dispute that his attempted service was improper. He does, however, argue that the case should not be dismissed at this point. In this position he is correct if this court can obtain jurisdiction through some other form of service. *See* Grammenos v. Lemos, 457 F.2d 1067 (2d Cir. 1972); Aquascutum of London, Inc. v. S. S. Am. Champion, 426 F.2d 205, 210

(2d Cir. 1970).[1] The plaintiff argues that the case may still proceed as a quasi in rem action via local garnishment of the "debt" owed the defendants by reason of their insurance company's duties to them under an automobile accident insurance policy. *See* Rivera v. New Jersey Bell Tel. Co., 55 F.R.D. 166 (E.D.N.Y.1972); Seider v. Roth, 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966).[2] If Connecticut law provides for jurisdiction founded upon garnishment of such "property," and if basing jurisdiction upon such a garnishment would not offend the due process clause in the circumstances of this case, *see* note 3 *infra*, the plaintiff's suit may proceed in this court. *See* Fed.R.Civ.P. 4(e)(2); Rivera v. New Jersey Bell Tel. Co., 55 F.R.D. 166 (E.D.N.Y.1972); Conn.Gen.Stat.Ann. § 52–329 (Supp. 1975). It is clear, however, that this is the only theory on which the suit may be maintained here; if it fails, therefore, the case must be dismissed. *See* Grammenos v. Lemos, 457 F.2d 1067 (2d Cir. 1972).

The main authority for Sykes' position is Seider v. Roth, 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966). In *Seider* the plaintiff, a New York resident injured in a Vermont automobile accident, sued Lemiux, *inter alia*, a resident of Quebec. As a basis for jurisdiction over Lemiux, the plaintiff garnished Lemiux's insurance company (incorporated in Connecticut and doing business in New York) by reason of its "debt" consisting of its duties to defend and indemnify Lemiux, to investigate the accident, and to pay certain medical expenses of the insured. Most of the prior case law held that contingent obligations may not be garnished, *see* Comment, Garnishment of Intangibles: Contingent Obligations and the Interstate Corporation, 67 Colum.L.Rev. 550, 553 (1967), and it would have seemed that the duty to indemnify was contingent upon a finding that the insured was liable to the plaintiff. But, relying on In re Estate of Riggle, 11 N.Y.2d 73, 226 N.Y.S.2d 416, 181 N.E.2d 436 (1962), the Court of Appeals in *Seider* implicitly held that *all* the insurer's "debts" to Lemiux matured as soon as the accident occurred. 17 N.Y.2d at 113, 269 N.Y.S. 2d at 101, 216 N.E.2d 312. Thus the court reasoned that the insurer could be garnished in New York (because the insurer was subject to process in New York) in order to obtain quasi in rem jurisdiction in the New York courts.[3]

---

1. This holding is distinguishable from that in Sagarino v. LaBrecque, Civ.No. H–74–339 (D.Conn. Mar. 12, 1975), dismissing an action because of improper service. Because that case presented potentially serious *forum non conveniens* problems, a dismissal in this district, which presented an opportunity to refile the case in the district where the entire action could be litigated, was more appropriate than allowing the plaintiff to reserve the defendant properly. *Cf.* Grammenos v. Lemos, 457 F.2d 1067, 1074 n.5 (2d Cir. 1972).

2. There is nothing in the record at this point to show that the defendants were in fact insured, that their insurance coverage included a duty to indemnify and defend in the sort of accident alleged here, or that their insurance company has any connection with Connecticut whatsoever. Nevertheless, the plaintiff should have a chance to attempt proper service; if the deficiencies listed above persist after the new service, they may be made the basis for a subsequent motion to dismiss. *See, e.g.*, Rivera v. New Jersey Bell Tel. Co., 55 F.R.D. 166, 167 (E.D.N.Y.1972); *cf.* Grammenos v. Lemos, 457 F.2d 1067, 1072 n.3 (2d Cir. 1972).

3. The court did not consider whether the due process clause was satisfied where the insurer was simply doing business in New York and that state's sole significant contacts with the action arose by reason of the plaintiff's residence there. At least one commentator concluded that the court probably reached an unconstitutional result. *See* Comment, Garnishment of Intangibles: Contingent Obligations and the Interstate Corporation, 67 Colum.L.Rev. 550, 559–560 (1967). In a subsequent case the New York court disagreed, *see* Simpson v. Loehmann, 21 N.Y.2d 305, 287 N.Y.S.2d 633, 234 N.E.2d 669 (1967), as has the Second Circuit, *see* Beja v. Jahangiri, 453 F.2d 959 (2d Cir. 1972); Minichiello v. Rosenberg, 410 F.2d 106 (2d Cir. 1968), aff'd on rehearing en banc, 410 F.2d 117 (2d Cir.), cert. denied, 396 U.S. 844, 90 S.Ct. 69, 24 L.Ed.2d 94

■ The foregoing analysis of *Seider* reveals the three questions that must be answered under Connecticut law[4] in or-

(1969) ; *cf.* Dorr-Oliver, Inc. v. Willett Associates, 153 Conn. 588, 219 A.2d 718 (1966) ; Victor v. Lyon Associates, Inc., 21 N.Y.2d 695, 287 N.Y.S.2d 424, 234 N.E.2d 459 (1967), appeal dismissed for lack of a substantial federal question sub nom., Hanover Ins. Co. v. Victor, 393 U.S. 7, 89 S.Ct. 44, 21 L.Ed.2d 8 (1968). The New York courts avoided a potentially severe constitutional problem, *see* Podolsky v. Devinney, 281 F.Supp. 488 (S.D.N.Y.1968), by holding that an appearance in a *Seider* action does not subject one to the in personam jurisdiction of the New York courts. *See* Simpson v. Loehmann, 21 N.Y.2d 990, 290 N.Y.S.2d 914, 238 N.E.2d 319 (1968) (per curiam denial of reargument). And the Second Circuit has indicated that a holding in a quasi in rem action has no collateral estoppel effect in a later in personam action. *See* Minichiello v. Rosenberg, 410 F.2d 106, 112 (2d Cir. 1968), aff'd on rehearing en banc, 410 F.2d 117 (2d Cir.), cert. denied, 396 U.S. 844, 90 S.Ct. 69, 24 L.Ed.2d 94 (1969). The Second Circuit has also held that *Seider* may not constitutionally be used where the plaintiff is not a resident of the forum state and the accident sued upon did not occur there. *See* Farrell v. Piedmont Aviation, Inc., 411 F.2d 812 (2d Cir.), cert. denied, 396 U.S. 840, 90 S.Ct. 103, 24 L.Ed.2d 91 (1969). A potential due process problem remains even though the plaintiff is a resident of the forum state if the insured refuses to cooperate with the insurance company in its defense of the *Seider* action, leading to a default judgment for the plaintiff. This would allow the plaintiff to recover from the insurance company although the latter had never had a chance to litigate the issue of its liability, and at least two courts have found this to pose due process problems. *See* Barker v. Smith, 290 F.Supp. 709, 714–715 (S.D.N.Y.1968) ; Podolsky v. Devinney, 281 F.Supp. 488, 499 (S.D.N.Y. 1968). *But cf.* 19 Stan.L.Rev. 654, 658 (1967). This problem would be eliminated if the insured's refusal to cooperate, which would violate the obligation to cooperate contained in the standard insurance contract, provided a defense to the insurance company. *See* Barker v. Smith, 290 F.Supp. 709, 714 (S.D.N.Y.1968) ; 19 Stan.L.Rev. 654, 658 (1967) ; *cf.* Minichiello v. Rosenberg, 410 F. 2d 117, 118 (2d Cir.) (en banc), cert. denied, 396 U.S. 844, 90 S.Ct. 69, 24 L.Ed.2d 94 (1969). On the basis of the record currently before me, it is not certain that any due process issues will arise here. The plaintiff resides in Connecticut; it is not yet determined wheth-

der to decide this case. First, does such a noncontingent obligation as the insurer's duty to defend[5] constitute a

er the defendants' insurer, if one exists, does business in Connecticut; there has been no refusal by the defendants to cooperate with their insurer. Thus no further discussion of constitutional issues is required here.

4. The law of the forum dictates the law of garnishment in diversity cases. *See* Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ; Chambers v. Blickle Ford Sales, Inc., 313 F.2d 252, 259 (2d Cir. 1963) ; Ricker v. Lajoie, 314 F. Supp. 401, 402 (D.Vt.1970).

Courts in other states are severely split over whether or not to follow *Seider*. *Compare, e. g.*, Kirchman v. Mikula, 443 F.2d 816 (5th Cir. 1971) (per curiam refusal to find *Seider* the law of Louisiana) ; Robinson v. O. F. Shearer & Sons, Inc., 429 F.2d 83 (3d Cir. 1970) (refusing to follow *Seider* for federal maritime attachment and Pennsylvania law purposes) ; Ricker v. Lajoie, 314 F.Supp. 401 (D.Vt.1970) (rejecting *Seider* in Vermont) ; De Rentiis v. Lewis, 106 R.I. 240, 258 A.2d 464 (1969) (refusal to follow *Seider* in Rhode Island), *with* Rintala v. Shoemaker, 362 F.Supp. 1044 (D.Minn.1973) (acceptance of *Seider* in Minnesota) ; Turner v. Evers, 31 Cal.App.3d Supp. 11, 107 Cal.Rptr. 390 (Super.Ct.1973) (following *Seider* in California) ; Forbes v. Boynton, N.H., 313 A.2d 129 (1973) (accepting *Seider* in New Hampshire, at least when the defendant lives in a *Seider* jurisdiction). *But cf.* Robitaille v. Orciuch, 382 F.Supp. 977 (D.N.H.1974) (restricting Forbes v. Boynton by refusing to accept *Seider* as New Hampshire law where a homeowners', not an automobile, liability insurance policy was involved and where the defendant was found to live in a non-*Seider* state).

5. For the purposes of this opinion, it is assumed *arguendo* that the duty to defend is noncontingent, having matured as soon as this suit was filed. *Cf.* Missionaries of the Co. of Mary, Inc. v. Aetna Cas. & Sur. Co., 155 Conn. 104, 110–112, 230 A.2d 21 (1967). There is an argument against this position : the duty to defend is a contingent liability, for it matures only when a suit is filed in a forum that has jurisdiction of the case. *See* Podolsky v. Devinney, 281 F.Supp. 488, 494 (S.D.N.Y.1968) ; Seider v. Roth, 17 N.Y.2d 111, 115, 269 N.Y.S.2d 99, 103, 216 N.E.2d 312 (1966) (Burke, Scileppi & Bergan, JJ., dissenting). If this argument is correct, the duty to defend may be analyzed in pari passu with the duty to indemnify, considered *infra*. It is worth noting, however, that there

"debt"?[6] Second, does a contingent liability constitute a "debt"? Third, if a contingent liability is not a "debt," does an insurer's duty to indemnify its insured under an automobile accident insurance policy mature as soon as the accident occurs and thus constitute a "debt" for purposes of garnishment in Connecticut as *Seider* held that it does under New York law? The first and third questions are novel ones for Connecticut law.[7]

### A. *The Duty to Defend*

Connecticut provides by statute for attachment or garnishment "when a debt is due from any person to [a] defendant" "in any civil action in which a judgment or decree for the payment of money may be rendered." Conn.Gen. Stat.Ann. § 52–329 (Supp.1975). *See generally* Conn.Gen.Stat.Ann. §§ 52–329 to 52–346 (1960; Supp.1975). There are several analytic forks in the road that must be traversed in considering whether the courts of this state would hold that the duty to defend is a garnishable "debt." Commentators and other courts have, in considering similar questions, implicitly viewed the duty to defend in two different ways. One school of thought seems to be that the duty to defend is simply a duty to pay the amount of money necessary for the insured's defense.[8] The other school of thought is that the duty to defend is a duty to perform a service:

"A typical defense clause reads: '[T]he company shall . . . defend in his [the insured's] name and behalf any suit [covered by this policy] . . . even if such suit is groundless, false or fraudulent; but the company shall have the right to make such investigation, negotiation and settlement . . . as may be deemed expedient . . . .' 4 Richards [on the Law of Insurance] 2043 [(5th ed. 1952)]. The wording of this clause rebuts any notion that the insurer promises only to pay money for a defense provided by some independent attorney. This conclusion is further supported by the fact that the usual insurance contract gives the insurer complete control over the arrangements for and conduct of the defense. *See* 4 *id.* at 2050."

19 Stan.L.Rev. 654, 656 n. 13 (1967). The view that the obligation to defend is a duty to provide services seems to be the one Connecticut would adopt:[9] the

seems to be no compelling reason to adopt this latter position since to do so might force insureds to defend themselves as to jurisdictional issues, which was probably not the understanding they had of the seemingly iron-clad obligations of their insurers to defend that are written into standard insurance contracts.

6. As in *Seider* there may also have been a duty on the insurer to investigate this case. If this duty has not already been completely performed, it merges into, or at least can be analyzed as completely similar to, the duty to defend. *See* 19 Stan.L.Rev. 654, 657–658 n.23 (1967). Thus it is not treated separately herein.

Some noncontingent liabilities do not pose the problems associated with the duty to defend that are discussed *infra*. One of these is the duty to pay medical costs of the insured, if any. *See id.* This obligation is discussed separately at the end of this opinion.

7. The two-page opinion in Robitaille v. Orciuch, 382 F.Supp. 977 (D.N.H.1974), states without citation or analysis that Connecticut does not follow the *Seider* rule. *Id.* at 978. No court in this jurisdiction has yet been presented with this question, however, and I approach it as one of first impression.

8. In reading the cases and literature it is impossible to distinguish this view from the view that the duty to defend is a duty to perform a service that may be liquidated to some dollar amount. Thus the cases that support the latter proposition, *see* p. 1094 *infra*, may stand for the former, and vice versa.

9. Some of the problems developed *infra* with respect to garnishment of the obligation to defend qua duty to perform services would apply equally with respect to garnishment of the obligation to defend qua duty to pay money. Specifically, the problem of valuation, *see* note 11 *infra*, and the problem of double liability, *see* p. 1094 *infra*, would be

Connecticut cases speak of a breach of the duty to defend occurring when a request to defend is refused, not when a request for reimbursement of counsel fees is denied. *See* Missionaries of the Co. of Mary, Inc. v. Aetna Cas. & Sur. Co., 155 Conn. 104, 109, 113, 230 A.2d 21 (1967); Lewis v. Michigan Millers Mut. Ins. Co., 154 Conn. 660, 662, 667, 228 A. 2d 803 (1967).

The next issue to resolve is whether the duty to defend qua duty to perform services is subject to garnishment. There are two somewhat interrelated possible approaches to this question also, and there is no clear indication of which the Connecticut courts would adopt. The first approach is to consider that the duty to defend may be translated into some liquidated amount of money, which might be treated as a debt for the purpose of garnishing the obligor insurance company. *See, e. g.,* Robinson v. O. F. Shearer & Sons, Inc., 429 F.2d 83, 86 (3d Cir. 1970); Simpson v. Loehmann, 21 N.Y.2d 305, 314, 315, 287 N.Y.S.2d 633, 640, 641, 234 N.E.2d 669 (1967) (Breitel, J., concurring). The second possible approach is that the duty may not be translated into money, but nonetheless remains as an obligation to perform the services which may be the subject of garnishment.

Courts in other states have refused to allow garnishment under the first approach because of the inherent unfairness that it would work on a party to a contract who had obligated himself to perform services. *See* 19 Stan.L.Rev. 654, 655–656 (1967) and cases cited

therein. Consider, for instance, a hypothetical starving artist who is paid in advance to paint a portrait and then pays off his debts and buys food with his commission. If he stands ready and willing to paint a portrait, it would be very unfair to garnish the liquidated value of this obligation and demand money from him.[10] Furthermore, allowing garnishment under the first approach might subject the insurer, as a practical matter, to double liability on the duty to defend. An insurer has not only a duty to defend but an interest in defending, for it has a substantial stake in the outcome of the litigation. *See* Podolsky v. Devinney, 281 F.Supp. 488, 499 (S.D.N.Y.1968); 19 Stan.L.Rev. 654, 656 (1967). Thus it may well feel the necessity of defending even after its obligation to defend has been attached. If the plaintiff wins, the insurer will lose not only the costs of the defense but also the plaintiff's recovery from the prior attachment of the duty to defend. *See* Robinson v. O. F. Shearer & Sons, Inc., 429 F.2d 83, 86 (3d Cir. 1970); *cf.* Podolsky v. Devinney, 281 F.Supp. 488, 495 (S.D.N.Y.1968). This result may not be unconstitutional, *cf.* Western Union Tel. Co. v. Pennsylvania, 368 U.S. 71, 82 S.Ct. 199, 7 L.Ed.2d 139 (1961), for the insurer is under no *legal* compulsion to incur double liability, *see* 19 Stan.L.Rev. 654, 656 n.17 (1967), but it is certainly unfair. In view of these problems, it seems unlikely that Connecticut would allow garnishment of a liquidated duty to defend qua duty to provide services.[11] *Cf.* Molloy v. Pru-

relevant in determining whether the obligation to defend qua duty to pay money could be regarded as a "debt." Whether the obligation to defend may be considered as one to pay money or as one to provide services, in other words, may not make any critical difference in the result.

10. If the artist had breached his contract, however, the unfairness would disappear, for the artist would be liable to his patron in damages. Thus, an old Connecticut case held that a claim for a breach of a contract to perform services was an attachable debt. *See* New Haven Steam Saw-Mill Co. v. Fow-

ler, 28 Conn. 103, 108 (1859). Here, there is no claim that the duty to defend has been breached.

As to the appropriateness of garnishing the artist's duty to perform qua duty to paint a picture, *see* p. 1095 *infra.*

11. It is questionable whether, under the first approach, garnishment should be permitted even if the problems of unfairness discussed in the text are conquered or ignored. A problem that remains is that of valuing the duty to defend in this case in advance of the actual defense. *See, e. g.,* Comment, *supra* note 3, at 552. (Insurance companies have

dential Ins. Co. of America, 129 Conn. 251, 27 A.2d 387 (1942) (held that two life insurance policies with no immediate right of cash redemption could not be reached by garnishment; the court did not attempt to liquidate and allow garnishment of the value of the insurer's obligation to provide coverage).

The second approach—that the "debt" consists of the services to be performed, not translatable into money—poses the same double liability problems as the first. But there is an additional serious obstacle to allowing garnishment of such an obligation as well.[12] This obstacle is revealed by an analogy to the law of assignment.[13]

Under the law of assignment certain contract rights may not be transferred to others. The classic example of a non-assignable contract right is a right to performance of personal services. *See, e.g.,* Rossetti v. City of New Britain, 163 Conn. 283, 291, 303 A.2d 714 (1972).[14] Thus a right to the services of a valet may not be a basis for garnishment, for the valet cannot be made to serve one with whom he has not contracted. *See* 4 A. Corbin, Contracts § 865 (1951). At least one court has found that the insurer's obligation to defend is personal to the insured, and therefore it may not be garnished. *See*

Robinson v. O. F. Shearer & Sons, Inc., 429 F.2d 83, 86 (3d Cir. 1970). This conclusion is bolstered by viewing the equities of the situation: an insurer sets the premium on a policy based in part upon the actuarial prediction of the cost of defending one like the insured. Furnishing a defense to the garnishor in case of a subsequent suit against him may present entirely different risks and costs than the insurer had bargained for, and it would be unfair to make the insurer furnish a defense to him.[15]

This unfairness arises out of the fact that the duty-to-defend clause is like a requirements contract—the insurer agrees to provide the insured with as much defense as he needs for a certain sum. To allow transfer of rights under a requirements contract to one with different requirements places an intolerable burden upon the obligor under the contract. *See, e.g.,* Crane Ice Cream Co. v. Terminal Freezing & Heating Co., 147 Md. 588, 128 A. 280 (1925); Annot., 39 A.L.R. 1192 (1925). Thus the right to be defended by the insurer should not be assignable, and, therefore, is not a "debt" for purposes of garnishment. I believe that the Connecticut courts would so hold. *Cf.* Rossetti v. City of New Britain, 163 Conn. 283, 291, 303 A. 2d 714 (1972); Molloy v. Prudential

---

surely worked out actuarial valuations of the duty to defend as applied to specific classes of risks, but *quaere* their relevance to a particular case.) However, it is not clear that this problem would be taken into account by the Connecticut courts, for they have held that liquidation of claims is unnecessary to their garnishment. *See* Chambers v. Blickle Ford Sales, Inc., 313 F.2d 252, 259 (2d Cir. 1963), and cases cited therein.

12. Although such a res is unusual, there is nothing to prevent creation of a res consisting of an obligation to perform services *vel non*. *See* Robinson v. O. F. Shearer & Sons, Inc., 429 F.2d 83, 85 (3d Cir. 1970); *cf.* New Haven Steam Saw-Mill Co. v. Fowler, 28 Conn. 103, 108 (1859).

13. Garnishment is really no more than an assignment of a contract right that does not take effect until a lawsuit determines that the defendant is liable to the garnishor.

Thus an analogy to assignment law is appropriate. *See* Simpson v. Loehmann, 21 N.Y. 2d 305, 314, 315, 287 N.Y.S.2d 633, 640, 234 N.E.2d 669 (1967) (Breitel, J., concurring).

14. The proposition is a fairly novel one in Connecticut; *Rossetti* cites only cases from other states and secondary sources.

15. *Seider* and its progeny do not make clear exactly how this defense might be used by the garnishor. The right to a defense in an automobile accident case could be used by one who had been in an automobile accident and who did not have an insurance company obligated to defend him. It is very difficult, as a practical matter, to conceive of a plaintiff suing with the expectation of receiving such a recovery. To the extent that state law does not allow the res to be liquidated, then, *Seider* presents a possible basis of jurisdiction that is perhaps of only academic interest.

Ins. Co. of America, 129 Conn. 251, 27 A.2d 387 (1942) (just as the court did not attempt to liquidate and allow garnishment of the insurer's obligation to provide coverage, *see* p. 1094 *supra*, neither did it attempt to garnish the insurer by reason of his obligation to provide the "service" of coverage under the policy).[16]

The foregoing analysis shows that Connecticut would not, using any approach, find an insurer's duty to defend to be a garnishable "debt" under Conn.Gen.Stat.Ann. § 52–329 (Supp. 1975). Therefore the duty to defend cannot provide a basis for jurisdiction of this suit in federal court.

### B. *The Duty to Indemnify*

It is clear that under Connecticut law an obligation wholly contingent upon the future happening of a condition precedent is not a "debt" that may be garnished. *See* Chambers v. Blickle Ford Sales, Inc., 313 F.2d 252, 259–260 (2d Cir. 1963), and cases cited therein. So the question occurs, is the duty to indemnify a noncontingent (ergo garnishable) "debt" under Connecticut law, maturing as soon as an accident occurs (as *Seider* held it to be under New York Law)?[17]

A typical automobile insurance policy requires the insurer " 'to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages.' " Comment, *supra* note 3, at 551–552 n.12, *quoting* E. Pat-

terson & W. Young, Cases and Materials on the Law of Insurance 697 (4th ed. 1961). The most natural reading of the above language is that the insurer only becomes obligated to indemnify the insured when the latter becomes obligated to pay damages. In other words, the insurer's obligation is contingent upon a judgment of liability. Absent any Connecticut cases to the contrary, the ordinary and natural reading of the policy controls. *See* Gaunt v. John Hancock Mut. Life Ins. Co., 160 F.2d 599, 601 (2d Cir.), cert. denied, 331 U.S. 849, 67 S.Ct. 1736, 91 L.Ed. 1858 (1947); Passkowski v. Prudential Ins. Co. of America, 182 F.Supp. 819, 821–822 (D.Conn.1960); General Constr. Co. v. Aetna Cas & Sur. Co., 151 Conn. 684, 686, 202 A.2d 146 (1964). Indeed, language in several Connecticut cases provides support for the interpretation urged here:

> "The defendant's duty to defend . . has a broader aspect than its duty to indemnify. . . . The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability. . . ."

Smedley Co. v. Employers Mut. Liab. Ins. Co., 143 Conn. 510, 516, 123 A.2d 755, 758 (1956); *see* Missionaries of the Co. of Mary, Inc. v. Aetna Cas. &

16. An early Connecticut case, Gaston v. Plum, 14 Conn. 343 (1841), may imply a different result. In that case, the court implicitly held that the rights under a one-year contract to extract minerals from a parcel of land could be transferred. Inasmuch as the assignee may have planned and been able to extract many more minerals than the assignor, *quaere* whether this case is consistent with the principle in requirements cases above cited. *Gaston* is not enough to compel a different result than is reached here, however. The court in *Gaston* did not squarely face the question of assignability: it was asked to decide whether the assignor could

enforce the contract following his assignment of his rights under it. The court said that he no longer had a sufficient interest to do so. In addition, the case is very old. I believe that the Connecticut courts would reach a different conclusion in today's industrial world, where the dangers to a landowner in a *Gaston* situation are more clearly foreseeable.

17. In some states the problem presented here does not arise, for contingent debts have been held garnishable. *See* Rintala v. Shoemaker, 362 F.Supp. 1044, 1049 (D. Minn.1973).

Sur. Co., 155 Conn. 104, 110, 230 A.2d 21 (1967). There are no Connecticut cases to the contrary.

"[P]ast cases have required the claim [sought to be garnished] to be 'due' in the sense that some amount is admittedly owing, even if the amount is not fixed. A wholly disputed claim has not been found attachable yet, and [Brown v. Nasin, 21 Conn.Supp. 16 (C.P. Hartford County 1958)] is close to saying that it may not be. . . ."

Chambers v. Blickle Ford Sales, Inc., 313 F.2d 252, 260 (2d Cir. 1963).

■ The duty to indemnify is a contingent obligation that is not an attachable debt within the meaning of Conn. Gen.Stat.Ann. § 52–329 (Supp.1975). Therefore the duty to indemnify provides no basis for exercise of quasi in rem jurisdiction in this court.

C. *The Duty to Pay Medical Expenses*

■ It may be that the defendants' insurer (if they have one) is obligated to pay any medical expenses the insured incurs as the result of a covered accident. If Beal, the defendant who was driving the truck that allegedly collided with the plaintiff's vehicle, suffered injuries in that collision (a fact which is not apparent from the present record) and incurred medical expenses thereby for which he has not yet been reimbursed, the putitive insurer may owe the defendants a debt in the amount of these unreimbursed expenses. This debt, although it may not yet be liquidated to a sum certain, is not contingent upon the occurrence of any condition precedent; thus, it is garnishable under Conn.Gen.Stat.Ann. § 52–329 (Supp. 1975)[18] and may provide the basis for exercise of the diversity jurisdiction of this court.[19]

■ Because it appears that there is a possible theory under which this suit might be maintained here, the action should not now be dismissed, see Grammenos v. Lemos, 457 F.2d 1067 (2d Cir. 1972). However, the improper service heretofore made on the defendants will be quashed, see Rivera v. New Jersey Bell Tel. Co., 55 F.R.D. 166 (E.D.N.Y. 1972). The plaintiff will be given 20 days to effect re-service under the provisions of Conn.Gen.Stat.Ann. § 52–329 (Supp.1975) by garnishment of any non-contingent debts owed the defendants by their insurer (if the insurer is subject to Connecticut process). If such service is not effected within this time, the action will be dismissed. It is

So ordered.

18. *See, e. g.,* Finch v. Great Am. Ins. Co., 101 Conn. 332, 125 A. 628 (1924) (obligation to indemnify insured for its fire losses becomes garnishable once there is a loss by fire covered under the policy; facts that a proof of loss has not yet been filed and the amount has not yet been liquidated are irrelevant).

19. Although the record at this stage does not reflect the existence of serious *forum non conveniens* problems if this debt is garnished and if this case is tried in Connecticut, a fuller record may show that it would be wiser to try the action in New Jersey, where the accident occurred and where both defendants reside. If so, the existence of a proper jurisdictional basis in this court will not compel the suit to be tried here; transfer is available under the "salutary provision of 28 U.S.C. § 1404(a)" (1970). *See* Minichiello v. Rosenberg, 410 F.2d 117, 119 (2d Cir.) (en banc), cert. denied, 396 U.S. 844, 90 S.Ct. 69, 24 L.Ed.2d 94 (1969).